### In re OMOSUN CHILDREN.

[Cite as *In re Omosun Children* (1995), 106 Ohio App.3d 813.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 93–T–4994.

Decided Oct. 16, 1995.

*Michael A. Partlow,* for appellant, Yvette Omosun.

*Craig H. Neuman,* for appellee Trumbull County Children Services Board.

*Thomas B.J. Letson,* guardian *ad litem.*

CHRISTLEY, Presiding Judge.

This is an accelerated calendar appeal, taken from a final judgment of the Juvenile Division of the Trumbull County Court of Common Pleas. Appellant, Yvette Omosun, seeks the reversal of the trial court's decision to permanently terminate her parental rights in two minor children, Davesus and Danyika Omosun.

In addition to four other children, appellant is the natural mother of both Davesus and Danyika. As of March 8, 1988, appellant resided with the six children and their natural father, Ben Omosun, in Warren, Ohio.

On that date, a complaint was filed in the trial court, alleging that Davesus was a dependent child. On that same day, an *ex parte* hearing was held, and the court issued a judgment granting emergency custody of Davesus to appellee, the Trumbull County Children Services Board. As part of this judgment, the trial court found that Davesus was a dependent child. Subsequently, on April 11, 1988, the court issued a second entry, granting temporary custody of Davesus to appellee.

On April 28, 1988, a second complaint was filed with the trial court, alleging that Danyika had been the subject of physical abuse. Again, an *ex parte* hearing was held that same day, and the court issued a judgment granting emergency custody of Danyika to appellee. As part of this particular judgment, the court found that Danyika was a dependent child. Subsequently, on June 20, 1988, the court issued a second entry as to Danyika, granting temporary custody of her to appellee.

Immediately after temporary custody of both children had been given to appellee, the trial court adopted an initial reunification plan. This plan was later modified by the court in a judgment issued on May 19, 1989. As part of this judgment, the court held that appellee's temporary custody of the children would terminate on January 1, 1990, unless appellee moved for an extension.

In October 1989, appellee filed such a motion. On November 15, 1989, the trial court granted the motion, specifically ordering that appellee was to retain temporary custody of both children until May 15, 1990.

On March 9, 1990, appellee moved for permanent custody of both children. As the primary basis for this motion, appellee alleged that appellant and Ben Omosun had continuously failed to remedy the conditions which had caused the removal of the two children from the home. Appellee further alleged that appellant and Omosun had failed to regularly visit the children.

A two-day trial on appellee's motion was finally held on January 7, 1991 and June 7, 1991. Much of the pretrial delay was attributable to two motions for continuance filed by appellant's trial counsel. Nevertheless, during this entire period, appellee never moved the trial court for another extension of the pending temporary custody order.

The trial court did not render its judgment on appellee's motion until October 22, 1993, approximately twenty-eight months after the trial had concluded. In holding that permanent custody of both children should be granted to appellee, the court found that both appellant and Ben Omosun had failed to fulfill their individual obligations under the reunification plan, had failed to remedy the problems which had caused the removal of the children, and had failed to visit the children regularly. Based upon this, the court concluded that neither child could

be placed with appellant within a reasonable time, and that permanent placement of the children with appellee would be in their best interests.

In appealing from this judgment,[1] appellant has assigned the following as error:

"1. The trial court's finding that the children in controversy could not be placed with the appellant within a reasonable time or should not be so placed was against the manifest weight of the evidence.

"2. The trial court's finding that granting permanent custody to the appellee was in the best interests of the children was against the manifest weight of the evidence.

"3. The trial court erred, to the prejudice of the appellant, by failing to enter a dispositional order within the time frame indicated in R.C. 2151.35(B)(3) and in accordance with the due process rights of the appellant pursuant to the Ohio and Federal Constitutions."

Under her first two assignments, appellant essentially seeks to challenge the merits of the trial court's three major factual findings. For the following reasons, this court concludes that it is not necessary for us to address these assignments because, as a result of our disposition of appellant's third assignment, the first two assignments have been rendered moot. See App.R. 12(A)(1)(b).

■ Specifically, this court concludes that the judgment of the trial court must be reversed because, due to the inordinate delay between the filing of the motion for permanent custody and the issuance of the judgment, the court lost its authority to issue an order terminating appellant's parental rights.

The primary issue raised under appellant's third assignment concerns the fact that approximately twenty-eight months elapsed between the date the trial ended and the date the trial court rendered its decision. Appellant submits that, as a result of this delay, she was denied her basic right to due process because the record supports the conclusion that the court had forgotten the facts of the case when it made its decision.

In support of this argument, appellant cites R.C. 2151.35(B)(3). This provision states that following the conclusion of a dispositional hearing, a juvenile court "shall" render its judgment within seven days.

---

1. A review of the appellate record in this case indicates that the appeal was pending before us approximately twenty months before it could be set to be heard. The record further indicates that the majority of this delay was attributable to delays in the filing of appellant's brief.

In interpreting R.C. 2151.35(B)(3), the appellate courts of this state have held that the seven-day requirement is mandatory, not discretionary. See, *e.g., In re Holtgreven* (June 23, 1995), Hancock App. No. 5–95–7, unreported, 1995 WL 368841. In support of this holding, these courts have usually emphasized that when the word "shall" is used in a statutory provision, it is typically interpreted to make the provision mandatory. It has also been held that such an interpretation is consistent with the proposition that the purpose of R.C. Chapter 2151 is "to provide judicial procedures in which the parties are assured of a fair hearing and of having their constitutional and other legal rights enforced." *In re Galloway* (1991), 77 Ohio App.3d 61, 70–71, 601 N.E.2d 83, 90.

However, these courts have further held that the failure of a juvenile court to comply with the seven-day requirement does not affect the court's jurisdiction to render its decision. Moreover, these courts have held that noncompliance is not a basis for reversing the decision *unless a denial of due process is shown. Galloway; In re Moses* (Feb. 21, 1992), Lucas App. No. L–91–033, unreported, 1992 WL 32117.

In *Holtgreven,* the Third Appellate District held that a violation of due process had not occurred when the judgment was rendered on the eighth day after the hearing. In *Galloway,* the Sixth Appellate District held that a violation had not occurred when the judgment was rendered in approximately two months. In contrast, the judgment in this case was not rendered until approximately twenty-eight months after the trial.

In arguing that she was denied due process, appellant aptly notes that one of the trial court's major factual findings was not supported by any evidence in the record. In responding to this argument, appellee admits that the trial court's finding concerning appellant's alleged failure to regularly visit the children was contradicted by the testimony of appellee's own witnesses. Based upon this, appellant argues that the trial court's decision was not predicated upon the evidence presented at trial because, by the time the court rendered its decision, it had forgotten the evidence.

While the fact that one of a trial court's findings was against the manifest weight of the evidence does not necessarily establish a due process violation, this court would also note that the findings in the trial court's judgment parroted the allegations in appellee's motion for permanent custody, *i.e.,* there is nothing in the judgment which would indicate that the court had an independent recollection of the evidence offered. The facts recited by the trial court are, in reality, nothing but conclusions which fail to contain any of the underlying facts. Under these circumstances, appellant was denied the right of having the case decided upon the evidence presented at trial.

■ Moreover, twenty-eight months of limbo in a juvenile dispositional hearing is, in our opinion, a *per se* due process violation, barring extraordinary circumstances. Such circumstances were not present in the instant case.

In conjunction with the foregoing analysis, this court would further note that our review of the record shows that, additionally, the trial court also clearly failed to render its decision within the statutory time limit governing how long a children's services agency can have temporary custody of a child.

R.C. 2151.353 governs the disposition of abused, neglected, or dependent children. Division (A)(2) of the statute provides that once a child has been found to be dependent or abused, a juvenile court can grant temporary custody of the child to a public children's service agency. Division (F) then provides:

"Any temporary custody order issued pursuant to division (A) of this section *shall terminate one year* after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care, except that, upon the filing of a motion pursuant to section 2151.415 of the Revised Code, the temporary custody order shall continue and not terminate until the court issues a dispositional order under that section." (Emphasis added.)

R.C. 2151.415 governs motions for dispositional orders concerning a dependent or abused child. Division (A) of this provision states that at least thirty days prior to the end of a temporary custody order made pursuant to R.C. 2151.353(F), the public children's services agency must file a motion requesting the juvenile court to issue one of six possible dispositional orders. One of the possible orders the agency can seek is an order for an extension of temporary custody, if the order is made in accordance with division (D) of the provision.

In relation to motions to extend, R.C. 2151.415(D) provides, in pertinent part:

"(1) If an agency pursuant to division (A) of this section requests the court to grant an extension of temporary custody for a period of up to six months, the agency shall include in the motion an explanation of the progress on the case plan of the child and of its expectations of reunifying the child with its family, or placing the child in a permanent placement, within the extension period. * * * The court may extend the temporary custody order of the child for a period of *up to six months* * * *.

"(2) Prior to the end of the extension granted pursuant to division (D)(1) of this section, the agency that received the extension shall file a motion with the court requesting the issuance of one of the orders of disposition set forth in divisions (A)(1) to (5) of this section or requesting the court to extend the temporary custody order of the child for an additional period of *up to six months.* * * *

" * * * The court may extend the temporary custody order of the child for an additional period of *up to six months* * * *.

" * * *

"(4) No court shall grant an agency more than *two extensions* of temporary custody pursuant to division (D) of this section." (Emphasis added.)

Pursuant to the foregoing provisions, the initial order granting temporary custody of a child to a public children's services agency can only last for one year. The running of this one-year period starts on one of two dates, whichever occurs first: (1) the date the complaint is filed; or (2) the date the child is taken into custody. Once the first year is concluded, the juvenile court can grant the agency two six-month extensions of temporary custody; thus, *the total time the agency can have temporary custody of an abused or dependent child is two years.*

In applying these provisions to the facts of this case, this court would note that the present versions of these statutes did not take effect until January 1, 1989, which is after the initial custody orders in this case had been rendered. However, as part of the legislation enacting these statutes, the General Assembly provided that any temporary custody order made prior to the effective date of the new statutes would be required to terminate before January 1, 1990. See *In re McCrary* (1991), 75 Ohio App.3d 601, 606, 600 N.E.2d 347, 350–351, citing Section 7(C), Am.Sub.S.B. No. 89, 142 Ohio Laws, Part I, 198, 264.

Thus, even if we assume, for the sake of argument, that a new two-year period began to run in this case as of January 1, 1990, appellee could have retained temporary custody of the two children only until December 31, 1991. Accordingly, the trial court was required to render its judgment on the motion for permanent custody prior to the latter date.

■ Research on this issue indicates that the time requirements of R.C. 2151.353 and 2151.415 have been the subject of considerable discussion over the past few years. At least one appellate district has held that in neglect and dependency cases, the time requirements are merely directory in nature, not mandatory. See *In re Johnson* (Mar. 29, 1995), Ross App. No. 94 CA 2003, unreported, 1995 WL 146064. However, the majority of appellate districts have held that the requirements are mandatory, and that the failure to comply results in the loss of authority by the trial court to make any order as to the custody of the child. See, *e.g., In re Travis Children* (1992), 80 Ohio App.3d 620, 609 N.E.2d 1356.

In concluding that the time requirements are not mandatory, the *Johnson* court noted that under R.C. 2151.353(E)(1), a juvenile court retains jurisdiction over any child under its protection until the child reaches the age of eighteen. However, the *Travis* court rejected this argument on the basis that a violation of the time requirements does not affect the jurisdiction of the court; instead, it

merely means that the court lacks the authority to make any dispositional order as to custody until that authority is reinvoked by the filing of a new complaint.

In determining whether to adopt the *Johnson* or *Travis* interpretation of the two statutes in question, this court is mindful of the fact that we must weigh two competing interests. On the one hand, it is evident that the primary purpose of R.C. Chapter 2151 is to protect the best interests of the child. See *In re Watson* (May 31, 1994), Butler App. No.CA93–06–114, unreported, at 10, 1994 WL 233157. On the other hand, as was noted above, R.C. Chapter 2151 was also intended to protect the rights and interests of the parents by ensuring that they will be given a fair trial. *Galloway,* 77 Ohio App.3d at 70–71, 601 N.E.2d at 90.

In relation to the best interests of the child, the *Watson* court emphasized, at 6:

"[R.C. 2151.353 and 2151.415] were enacted in response to the problem of 'foster care drift.' They are aimed at preventing a child from foundering in foster care under a temporary custody order. They increase the responsibility of juvenile courts to review and oversee the permanency planning efforts of children services agencies. They encourage a degree of continuity and finality in a child's life by insisting that the agency and the courts come up with a permanent plan for the child within a definite time."

In this court's opinion, the *Travis* court's interpretation of R.C. 2151.353 and 2151.415 strikes a proper balance between the foregoing interests.

First, we would note that both statutes employ the word "shall" in reference to the requirement of rendering a final decision concerning permanent custody within two years. As a general proposition, the Supreme Court of Ohio has held that the word "shall" should be construed as mandatory unless the language of the entire statute clearly indicates that the legislature did not intend for the word to be interpreted in that manner. *Dorrian v. Scioto Conservancy Dist.* (1971), 27 Ohio St.2d 102, 56 O.O.2d 58, 271 N.E.2d 834, paragraph one of the syllabus.

Even when read in the context of the entire statutory scheme governing abused, neglected, or dependent child, R.C. 2151.353 and 2151.415 contain no language which would support the conclusion that the General Assembly intended for the two-year limit to be directory, not mandatory. Moreover, such an interpretation would clearly defeat the purpose of stopping "foster care drift."

However, the failure to comply with the two-year requirement does not mean that the juvenile court loses jurisdiction over the child and that custody automatically reverts to the parents. As the *Johnson* court noted, R.C. 2151.353(E)(1) specifically states that a juvenile court retains jurisdiction over a child until he or she becomes eighteen years old. Based upon this, it follows that noncompliance with the time limit does not affect the court's jurisdiction, but simply deprives the

court of its authority to render any final dispositional order as to custody until that authority has been reinvoked by the filing of a new complaint.

The importance of this distinction was noted by the Twelfth Appellate District in *Watson:*

"[The parents] insist that R.C. 2151.353 and 2151.415 prevent a juvenile court from making any orders regarding the custody of a child once that child is placed in substitute care for more than two years, regardless of the circumstances and regardless of whether a new complaint has been filed. Under [the parents'] interpretation of the sunrise provisions in R.C. Chapter 2151, if no final disposition is reached within two years after the child is removed from the parents' custody, the child must be returned to his parents, regardless of the child's safety.

"This interpretation is not supported by the legislation nor the cases [the parents] cite. [The parents'] argument ignores the continuing jurisdiction explicitly granted to the trial court under R.C. 2151.353(E)(1) and 2151.415(E). More importantly, such a bright-line rule violates the guiding principle in ordering custody in abuse, neglect and dependency cases—the best interests of the child.

"On the other hand, this court will not allow a children services agency to circumvent the time limits on temporary custody orders simply by filing a new complaint to reinvoke the court's jurisdiction. Therefore, where a children services agency attempts to reinvoke the trial court's jurisdiction, this court must review the record to determine whether the refiling of a new complaint was necessary under the circumstances, or simply a means of extending temporary custody beyond two years." *Id.* at 9–10.

Under the *Watson* analysis, if the failure to render a final dispositional order within two years can be attributed to the existence of extenuating circumstances, it is not necessary for the children services agency to give custody of the child back to the parents prior to the filing of the new complaint, *i.e.,* the agency's temporary custody of the child can be continuous throughout the entire period. The only instance in which the child must be returned to the parents is when (1) the failure of the juvenile court and children's services agency to comply with the two-year limit cannot be explained by the existence of extenuating circumstances, and (2) the purpose of filing the new complaint is simply to circumvent the statutory requirement.

This court finds the *Watson* analysis to be persuasive because it is, in essence, the logical extension of the basic holding in *Travis.* On the one hand, the analysis protects the best interests of the child by not requiring the return of the child to the parents when there is a legitimate reason as to why the two-year limit was not met. Yet it also protects the rights of the parents by forcing both

the agency and the juvenile court to act promptly when there is no legitimate reason to delay.

In this case, the trial court clearly failed to comply with the statutory time limits of R.C. 2151.353 and 2151.415. Again, even if we assume that a new two-year period began to run on January 1, 1990, the trial court did not render its decision until October 1993. Moreover, the record shows that appellee did not try to reinvoke the court's authority after the two-year period had lapsed. Thus, pursuant to the foregoing analysis, the court lost its authority to render a decision on appellee's motion for permanent custody.

Finally, this court would note that even if a new complaint had been filed in this case, the record does not show the existence of any extenuating circumstances. Instead, the record shows that the inordinate delay was primarily due to the inability or unwillingness of the trial court to render a decision.

The combination of the trial court's failure to comply with the seven-day requirement of R.C. 2151.35(B)(3) and the failure of the court to render its decision with the two-year limit of temporary custody resulted in a clear denial of appellant's right to due process of law. Thus, appellant's third assignment has merit, and her first two assignments are rendered moot.

The judgment of the trial court is reversed and the action is hereby remanded for further proceedings consistent with this opinion. Specifically, it is the order of this court that upon remand, the trial court shall issue a new judgment ordering that custody of Davesus and Danyika Omosun be given to appellant, Yvette Omosun.

*Judgment reversed*
*and cause remanded.*

JOSEPH E. MAHONEY and NADER, JJ., concur.