[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, in a termination of parental rights case.
On July 14, 1995, Lucas County Children Services Board ("LCCSB") filed a complaint in dependency and neglect seeking original permanent custody of Bailey D., born July 8, 1995. The complaint alleged Bailey tested positive for cocaine at the time of her birth. LCCSB was granted emergency temporary custody.
On July 31, 1995, counsel was appointed to represent the child's mother, Caryn D.; a guardian ad litem was appointed for Bailey. The adjudicatory hearing was scheduled for October 10 and 11, 1996. On October 3, 1995, retained counsel for Bailey's putative father, Robert A., filed a motion for a continuance of the scheduled adjudicatory/dispositional hearing. Robert asserted he needed the continuance for the purpose of establishing parentage of Bailey. Robert was later determined to be Bailey's father.
On October 10, 1995, the court granted Robert's motion, noting that the parties agreed to hold the adjudicatory and dispositional hearings on the same date. In addition, on October 10, 1995, all parties agreed to waive the ninety day time limit in which a dispositional hearing must be held. See R.C.2151.28(B)(3). The court scheduled a new hearing date for January 23, 1996.
At the hearing conducted on January 23, 1996, LCCSB changed its motion for permanent custody to one for temporary custody. The trial court found Bailey to be a dependent child and awarded temporary custody to LCCSB. Amended case plans were filed for the parties.
On June 7, 1996, LCCSB filed a motion to change custody of Bailey to Robert A., to terminate the agency's temporary custody, and to award LCCSB protective supervision rights for up to six months. Temporary custody of Bailey remained with LCCSB after the filing of this motion.
On July 2, 1996, LCCSB filed a motion to dismiss its June 7 motion and renewed its motion for permanent custody of Bailey. The agency asserted that, although Robert participated in the services required by his case plan, he had failed to "internalize" what he learned there. On July 3, 1996, the court dismissed LCCSB's motion to terminate temporary custody and ordered that the dispositional hearing on the motion for permanent custody be held on October 21 and 22, 1996.
On disposition, the court granted permanent custody of Bailey to LCCSB, finding that both parents failed to remedy the conditions that caused the child's removal from the home. The court also found that both parents demonstrated a lack of commitment toward the child. The court further held that it would be in the best interest of Bailey to award permanent custody to LCCSB. Finally, the court entered a finding that the child could not be placed with either parent within a reasonable time.
Both parents separately appeal from that judgment. Appellant, Caryn D., sets forth the following assignment of error:
 "THE COURT COMMITTED REVERSIBLE ERROR BY PERMITTING THE PARTIES TO CONTINUE THE ADJUDICATION HEARING BEYOND THE SIXTY DAY LIMIT MANDATED BY O.R.C. 2151.28(a)(2). SIMILARLY, THE COURT PERMITTED CONTINUANCE OF THE DISPOSITION HEARING BEYOND THE NINETY DAY LIMIT IN VIOLATION OF O.R.C. 2151.28(b)(3)."
Appellant, Robert A., assigns the following as error in the proceedings below:
 "The trial court erred in awarding permanent custody of Bailey [D.] to Lucas County Children Services Agency where such award was not supported by clear and convincing evidence."
In her assignment of error, appellant, Caryn D., contends the trial court violated the time constraints, provided in R.C. 2151.28(A)(2) and R.C. 2151.28(B)(3), for holding the adjudicatory and dispositional hearings in a juvenile court proceeding.
While appellant is correct in asserting that R.C.2151.28(A)(2)(b) requires a juvenile court to hold an adjudicatory hearing within sixty days after the filing of the complaint and R.C. 2151.28(B)(3) requires the court to hold a dispositional hearing within ninety days after the filing of the complaint, a party may implicitly waive this right by failing to move for dismissal when it becomes the party's right to do so and assists in delaying the hearing(s). In re Kutzli (1991), 71 Ohio App.3d 843,846; In re Jones (Dec. 4, 1996), Lorain App. No. 96-CA-006393, unreported; In the Matter of: N. B. (Apr. 15, 1996), Butler App. Nos. CA95-02-031, CA95-03-056 and CA95-06-017, unreported; Inre Keller (Dec. 8, 1994), Cuyahoga App. No. 66451, unreported.
In the case before us, appellant never objected to continuing either the adjudicatory or dispositional hearings. In fact, she agreed to the continuance and to holding both hearings on the same day. Moreover, we note, and appellant agrees in her reply brief, that the failure to comply with the sixty day time limit for holding an adjudicatory hearing does not deprive the juvenile court of the right to enter an adjudication. See R.C.2151.28(K). Likewise, a failure to hold a dispositional hearing within ninety days of the filing of a complaint does not divest the court of the jurisdiction to enter dispositional orders. Inre Young (1996), 76 Ohio St.3d 632, 637.
Finally, we find that delay of the dispositional hearing did not violate Caryn's due process rights. Unlike In re OmosunChildren (1995), 106 Ohio App.3d 813, there is no suggestion in the record of the present case that the delay caused the juvenile court to enter erroneous findings of fact or "conclusions which fail to contain any of the underlying facts." Id. at 817. Further, appellant did not spend "twenty-eight months in limbo" after a dispositional hearing was held, waiting for the court to enter its judgment. Id. at 818. Instead, the record in this case discloses the dispositional hearing was continued to provide the child's natural father with an opportunity to remedy the conditions for which the child was removed from the home. At the same time, mother, who did not object to any of the continuances, had more time to avail herself of the services offered by LCCSB.
Accordingly, Caryn D.'s sole assignment of error is found not well-taken.
Appellant, Roberto A., in his single assignment of error, argues the trial court erred in finding there was clear and convincing evidence that Bailey could not be placed with either of her parents within a reasonable time.
At a hearing on a complaint requesting permanent custody of a child, the children services agency must establish that one or more of the conditions listed in R.C. 2151.414(E) exists as to each of the child's parents. If, after considering all the relevant evidence, the court determines that one or more of the conditions listed in R.C. 2151.414(E) exists, the court can and must enter a finding that the child cannot be placed with either of his or her parents within a reasonable time or should not be placed with his or her parents. Finally, under R.C. 2151.414(D), a juvenile court must consider the best interest of the child by examining factors relevant to that case. A nonexclusive list of factors relevant to the best interest of the child is found in R.C. 2151.414(D)[1].
Only if each of these requisites are supported by clear and convincing evidence, can a juvenile court terminate the rights of a natural parent and award permanent custody of a child to a children services agency. In re William S. (1996), 75 Ohio St.3d 95. Clear and convincing evidence is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
In the case before us, the trial court specifically found that the conditions set forth in R.C. 2151.414(E)(1) and R.C. 2151.414(E)(4) existed. R.C. 2141.414(E)(1) and (E)(4), as effective at the time the motion for permanent custody was filed in this case, stated:
 "(1) Following the placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purposes of changing parental conduct to allow them to resume and maintain parental duties.
"* * *
 "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child, or by other actions showing an unwillingness to provide an adequate permanent home for the child."
In this case, the record reveals that the child was removed from the mother's custody shortly after her birth and was placed in a foster home. At birth, Bailey tested positive for cocaine in her system, had a low birth weight, and was "irritable" when presented with sounds and light. Caryn has a long term substance abuse problem, including addictions to cocaine and heroin. She entered numerous substance abuse treatment programs since she was thirteen but failed to overcome her drug abuse problems. Caryn's relationship with Bailey's father, Roberto A., can be described, at best, as stormy. Roberto has a history of committing acts of domestic violence, both against his former wife and Caryn. The father also admitted that he had alcohol and cocaine abuse problems.
When Roberto became involved in this case, the LCCSB prepared a case plan requiring him to (1) attend parenting classes; (2) establish independent housing; (3) participate in substance treatment; (4) engage in domestic violence counseling; and (5) consistently visit with his child. When it became apparent that Roberto was not able to end his relationship with Caryn, he was asked to enter a program addressing the issue of co-dependency.
It is undisputed that while Caryn was unable to overcome her drug abuse problem, Roberto was ostensibly successful in achieving his goals. Roberto was, however, unsuccessful in ending his relationship with Caryn. Despite the fact that Roberto claimed he neither wanted to see nor was seeing Caryn, the evidence offered at the dispositional hearing revealed that at least through the middle part of June 1996, Caryn was staying in Roberto's apartment "three or four nights" per week.
In June and July 1996, in-home visits between Roberto and Bailey were established. Although Roberto knew that Caryn was not allowed to be present during these times, the family aide who accompanied Bailey on the visits informed the caseworker of the fact that Caryn was in the apartment during visitation. In-home visits were then canceled. In addition, the evidence disclosed that, throughout the summer of 1996, Roberto was the payee on Caryn's social security check. Moreover, he provided Caryn with extra funds on, at least, a weekly basis.
In August 1996, the police investigated a charge of domestic violence leveled by Caryn against Roberto. Although Caryn refused to prosecute, the incident happened near Roberto's apartment and Caryn told the police she was there to get some of her things from that apartment.
On September 30, 1996, Roberto told an LCCSB supervisor that he had not seen Caryn for a week. He corrected himself and stated that he had seen Caryn in court that morning. Testimony showed Roberto and Caryn were together on September 29, 1996, the night when Roberto was arrested on an outstanding bench warrant. On October 18, 1996, Caryn's caseworker went to Roberto's apartment in order to advise Caryn to contact her attorney. She found Caryn in front of Roberto's residence exiting from his motor vehicle. Caryn told the caseworker that she had called Roberto because she needed a ride and was fearful due the fact that he might believe she "set him up.".
In recommending that it would be in the best interest of Bailey to be in the permanent custody of LCCSB, one caseworker, Jacqueline Mars, stated her recommendation was:
 "[b]ased on [Roberto's] still continued relationship with Caryn * * * who is still using; the fact that [Roberto] has allowed Caryn to have contact with the child when he was told that he should not be allowing her to do so; that he has repeatedly said that he would sever his relationship with Caryn if she continued to use; that he has been dishonest with me [the caseworker]; and that Caryn also continues to use and has not successful in treatment; and the domestic violence between the two of them."
Roberto's successful completion of required programs and use of the agency's services is laudable. In addition, the fact that this father was apparently drug and alcohol free at the time of the dispositional hearing must be commended. Nevertheless, clear and convincing evidence was offered at the hearing to show that appellant had not truly remedied the condition that caused Bailey to be removed from her home. That condition was the continued substance abuse by her mother and the co-dependent, sometimes violent, relationship between her parents. Even if we would assume that Caryn initiated all contact between the parties, the evidence demonstrates Roberto was unable and/or unwilling to sever his ties to this woman. This inability is both the condition not remedied and an act demonstrating Roberto's lack of commitment toward Bailey. Therefore, clear and convincing evidence supports the juvenile court's determination that Bailey could not be placed with Roberto within a reasonable time. Even though not at issue, clear and convincing evidence also supports a finding that an award of permanent custody to LCCSB was in the best interest of this child.
Accordingly, Roberto's assignment of error is found not well-taken.
The judgment of the Lucas County Court of Common Pleas, Juvenile Division is affirmed. Roberto A. and Caryn D. are ordered to each pay one-half of the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ________________________________ Peter M. Handwork, P.J.
JUDGE
 ______________________________ George M. Glasser, J.
JUDGE
 ______________________________ Melvin L. Resnick, J.
JUDGE
CONCUR.
[1] These factors were:
 "(1) The reasonable probability of the child being adopted, whether adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate an adoption.
 "(2) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 "(3) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(4) The custodial history of the child;
 "(5) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."