Appellant Sandra Ashley appeals a judgment granting permanent custody of two of her natural children, Cain Davis and Bridgette Ashley, to appellee Pickaway County Department of Human Services ("PCDHS"). The appellant assigns a single error for our review:
 The juvenile court erred in granting the motion of the Pickaway County Department of Human Services for permanent custody of Bridgette Ashley and Cain Davis.
We find that the grant of permanent custody to the PCDHS was supported by clear and convincing evidence. Accordingly, we affirm the juvenile court's judgment.
 I.
On July 23, 1996, the Pickaway County Court of Common Pleas found probable cause to believe that Cain Davis, then nine years old, and Bridgette Ashley, then seven years old, were neglected and dependent children. Based upon this finding, the court ordered emergency temporary custody of the children to the PCDHS. The PCDHS then filed complaints in the juvenile court alleging Cain and Bridgette to be "neglected" and "dependent" children as defined in R.C. 2151.03 and R.C. 2151.04, respectively. The PCDHS also alleged that Bridgette was an "abused child" within the meaning of R.C. 2151.031. The PCDHS alleged inadequate supervision and care for the children and that a neighbor witnessed the appellant strike Bridgette in the face.
In October 1996, the juvenile court adjudicated Cain to be a dependent child within the meaning of R.C. 2151.04. The court made its adjudication pursuant to the appellant's admission that Cain was dependent and the PCDHS's dismissal of the remaining allegations of neglect. The court also adjudicated Bridgette to be a dependent child in November 1996. In Bridgette's case, the appellant likewise admitted dependency and the PCDHS dismissed the remaining allegations of neglect and abuse. For both children, the juvenile court ordered that temporary custody would continue with the PCDHS. The PCDHS placed the children in foster care, where they remained during the next two years. The PCDHS also formulated a "case plan" to meet the goal of reuniting Cain and Bridgette with the appellant. Pursuant to this case plan, the appellant was to: (1) undergo parenting training to better learn how to meet the children's needs; (2) complete an alcohol and drug abuse assessment and receive treatment as needed; and (3) exercise regular and frequent visitation with the children while they were in foster care. Over the next two years, the juvenile court periodically issued entries continuing temporary custody.
On August 3, 1998, the PCDHS filed a motion for permanent custody of Cain and Bridgette. The appellant moved to dismiss PCDHS's motion on the grounds that (1) PCDHS filed its motion more than two years after temporary custody had first been awarded, and (2) the permanent custody motion did not specifically set forth facts to clearly identify the basis for the permanent custody request. The trial court ultimately denied the motion to dismiss and, following a two-day hearing, granted PCDHS's motion for permanent custody. The appellant commenced separate appeals of the juvenile court's judgment. Because the cases present common issues and interests, we have sua sponte
consolidated them. See App.R. 3(B).
 II.
In her lone assignment of error, the appellant claims that the juvenile court erroneously granted PCDHS's motion for permanent custody of Cain and Bridgette. In support of her assignment, she raises two issues. First, the appellant argues that the juvenile court should not have issued a dispositional order after the statutory termination date of temporary custody. Second, even if the juvenile court retained discretion to issue a further dispositional order for Cain and Bridgette, the appellant argues that the PCDHS did not establish the propriety of permanent custody by clear and convincing evidence. We analyze each of these contentions in turn.
 A.
R.C. 2151.353 governs the disposition of a child adjudicated to be neglected, abused, or dependent.[1] Under R.C.2151.353(A)(2), the juvenile court committed Cain and Bridgette to the temporary custody of the PCDHS in 1996. When a juvenile court orders temporary custody under R.C. 2151.353(A)(2), the order becomes subject to certain time limits described elsewhere in the statutory scheme. In particular, R.C. 2151.353(F) states:
 Any temporary custody order issued pursuant to division (A) of this section shall terminate one year after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care, except that, upon the filing of a motion pursuant to section 2151.415 of the Revised Code, the temporary custody order shall continue and not terminate until the court issues a dispositional order under that section.
(Emphasis added.) Thus, R.C. 2151.353(F) provides a "sunset date" upon which a temporary custody order will terminate. In re McKean
(Apr. 22, 1998), Allen App. Nos. 1-97-46, 1-97-47, unreported. The only exception to this "sunset date" lies when the agency having temporary custody files a motion pursuant to R.C.2151.415(A). Under this provision, a children services agency can request that the juvenile court issue a particular disposition upon termination of the initial temporary custody order. Included among the agency's possible choices are a request for permanent custody and a request for an extension of temporary custody. R.C. 2151.415(A)(4) and (A)(6). If the agency chooses the latter, it may obtain an extension of temporary custody for up to six months. See R.C. 2151.415(D)(1). The juvenile court may grant the agency only two six-month extensions of temporary custody. R.C. 2151.415(D)(4). Thus, based on the interplay between R.C. 2151.353(F) and R.C. 2151.415(A) and (D), an agency may have temporary custody of a dependent child for a maximum of two years. In re Omosun Children (1995), 106 Ohio App.3d 813,819.
In this case, the PCDHS secured emergency temporary custody of Cain and Bridgette on July 23, 1996. The juvenile court later adjudicated the children as dependent and continued temporary custody. Pursuant to R.C. 2151.353(F), the temporary custody order expired on July 22, 1997, i.e. one year from the time the children were first placed in temporary care, unless the PCDHS filed a timely motion under R.C. 2151.415(A). See In re Amy W.
(Jan. 19, 1995), Jackson App. No. 94CA737, unreported. There is no record in either case that the PCDHS filed a motion pursuant to R.C. 2151.415(A). Thus, as a technical matter, the juvenile court's initial temporary custody order should have terminated on the July 22, 1997 "sunset date." In re Young Children (1996),76 Ohio St.3d 632, 637.[2] The passing of the "sunset date" under R.C. 2151.353(F), however, does not divest the juvenile court of jurisdiction to enter a dispositional order affecting a dependent child. Id. at syllabus. When the sunset date passes without an agency filing a R.C. 2151.415(A) motion, courts have discretion to make a further dispositional order if "the problems that led to the original grant of temporary custody have not been resolved or sufficiently mitigated * * *." Id. at 638; see also, In reHare (Mar. 2, 1998), Scioto App. No. 97CA2532, unreported. The juvenile court found that the appellant's problems leading to the original grant of temporary custody had not been sufficiently mitigated and therefore utilized its discretion to make further dispositional orders concerning Cain and Bridgette.
The appellant argues that the court did not have "clear and convincing evidence" that the appellant's problems had not been sufficiently resolved or mitigated. The appellant insists that the PCDHS presented no evidence or testimony to indicate what her living circumstances were during the six-month period immediately preceding the permanent custody hearing. Further, the record showed that the appellant completed a substance abuse counseling program, which was one of the matters prescribed by the case plan. The appellant therefore insists that the juvenile court had no basis to exercise its discretion to issue further dispositional orders. Assuming, without deciding, that a juvenile court must find "clear and convincing evidence" that problems leading to the original temporary custody order were sufficiently resolved or mitigated, we discern no error.[3]
"Clear and convincing evidence" is defined as a measure or degree of proof that is more than a mere "preponderance" of evidence, but not to the extent of such certainty as the "beyond a reasonable doubt" standard in criminal cases, and that provides in the trier of fact's mind a firm belief or conviction as to the facts sought to be established. Cincinnati Bar Assn. v.Massengale (1991), 58 Ohio St.3d 121, 122. An appellate court, when reviewing whether the "clear and convincing standard" has been met, will affirm judgments supported by some competent, credible evidence. In re Hiatt (1993), 86 Ohio App.3d 716, 725. Accordingly, an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the trial court's findings.State v. Schiebel (1990), 55 Ohio St.3d 71, 74. In this case, we find competent and credible evidence to support the trial court's finding that the appellant's problems leading to the original temporary custody order were not sufficiently mitigated.
Although the appellant focuses on a lack of evidence concerning her living arrangements in the six months prior to the permanent custody hearing, this factor was not dispositive. The record shows that a major reason for the initial temporary custody order was the appellant's lack of care and supervision over the children, as well as a concern that Bridgette was being physically abused. Because of this problem, the case plan called for the appellant to receive parenting training. However, the evidence adduced during the hearing showed inadequate efforts by the appellant to secure parenting training as contemplated by the original case plan. The appellant presented no evidence to rebut this apparent lack of effort to improve her parenting skills. In addition, there was testimony from Amy Poling, the appellant's oldest daughter, that the appellant was continuing to abuse drugs and alcohol regularly. Thus, there is ample support for the trial court's conclusion that the appellant had failed to resolve or mitigate a key factor, i.e. inadequate parenting skills, that led to the original temporary custody order.
Further, there was considerable evidence that the appellant's living situation had not significantly improved during the time the children were in temporary custody. Apart from a general concern about the children being unsupervised, an additional problem leading to the temporary custody determination was that the appellant's home was frequently without electricity or water. There was evidence in the record showing that the appellant failed to rectify this situation. Ms. Poling's testimony and other exhibits offered by the PCDHS revealed that the appellant's utilities were turned off during much of the period that Cain and Bridgette were in the PCDHS's temporary custody. Thus, there was evidence that the appellant's living conditions, another concern leading to the original temporary custody order, had not changed during the two years that Bridgette and Cain were away.
In light of the evidence in the record suggesting that the appellant had changed little since the temporary custody orders were issued, the juvenile court did not err in exercising its discretion to enter a further dispositional order. There was competent, credible evidence upon which the juvenile court could conclude that the problems leading to the original temporary custody order had not been resolved or sufficiently mitigated. Thus, we reject the appellant's first argument and conclude that the trial court properly proceeded to a determination of whether a permanent custody order was appropriate.
 B.
The appellant's second argument challenges the juvenile court's ultimate decision to grant permanent custody of Cain and Bridgette to the PCDHS. In determining whether to grant permanent custody of a child who is neither abandoned nor orphaned, a court must apply a two-part test enunciated in R.C. 2151.414(B). In reHoff (July 28, 1993), Wayne App. No. 2781, unreported. First, the court must find that a grant of permanent custody to the agency seeking it is in the best interests of the children. R.C.2151.414(B). Second, the court must find that the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. R.C.2151.414(B)(1). The agency seeking permanent custody has the burden of satisfying each of these prongs by clear and convincing evidence. Id.; see, also, In re Shanequa H. (1996), 109 Ohio App.3d 142,144-45 (agency has burden of establishing statutory antecedents necessary for award of permanent custody)
Following the permanent custody hearing, the juvenile court found that the PCDHS satisfied both prongs. The appellant does not take issue with the court's analysis regarding the best interests of the child. However, the appellant asserts that there is no clear and convincing evidence to satisfy the conclusion that R.C. 2151.414(B)(1) applied. The appellant points to three principal factors to support her argument: (1) the PCDHS's lack of evidence regarding her living situation in the six months prior to the custody hearing; (2) the uncontroverted testimony of several witnesses that Cain and Bridget would prefer to live with the appellant; and (3) that the appellant complied with the case plan by completing a substance abuse recovery program. We disagree with the appellant.
In deciding that Cain and Bridgette could not or should not be placed with their parents, the juvenile court relied upon R.C.2151.414(E), which provides guidance for making this determination. R.C. 2151.414(E) states:
 In determining * * * whether a child cannot be placed with either parent within a reasonable time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent * * *.
The statute then lists twelve factors for the court to consider in making its determination. See R.C. 2151.414(E)(1) to (E)(12). Proof of any of the enumerated factors by clear and convincing evidence mandates a determination that the children should not be placed with their parents. In re Shanequa H., supra,109 Ohio App. 3d at 146. In this case, the trial court found R.C.2151.414(E)(1) and (E)(4) established by clear and convincing evidence.
R.C. 2151.414(E)(1) mandates a finding that a dependent child cannot or should not be placed with a parent if:
 Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
Pursuant to R.C. 2151.414(E)(1), the trial court found that the children's parents had not made efforts to correct problems that caused them to be removed from the appellant's home. The evidence showed that the appellant rarely contacted the PCDHS to follow up on the case plan and did not show any meaningful effort to obtain counseling for parenting skills. As mentioned previously, parenting training was a significant part of the appellant's case plan, as her lax supervision over her children was a principal reason for the original temporary custody order. Moreover, the appellant allowed her utilities, including water and electricity, to be terminated during the period of time that Cain and Bridgette were in temporary custody. The appellant allowed the utilities to remain terminated and ignored efforts by the PCDHS to assist her in restoring them. Even without evidence of her living situation for the six months prior to the permanent custody hearing, which the appellant failed to present on her own, the record supports a conclusion that the appellant showed little effort in rectifying the situation that led to the original grant of temporary custody to the PCDHS. Further, neither Cain's father nor Bridgette's father made any meaningful attempt to establish a parental relationship and have not participated in the custody proceedings; in fact, the court noted that the whereabouts of Cain's father were unknown. We therefore find no error in the juvenile court's determination that R.C.2151.414(E)(1) was established by clear and convincing evidence.
The juvenile court also found R.C. 2151.414(E)(4) applicable to the circumstances of this case. R.C. 2151.414(E)(4) supports a finding that a child cannot or should not be placed with either parent if:
 The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child * * *.
The record supports the court's finding that the PCDHS established this factor by clear and convincing evidence. The lack of commitment demonstrated by Cain's father and Bridgette's father was self-evident, as neither participated in the custody proceedings or provided support for the children. The appellant's involvement in the children's lives was better than that of their fathers, but also evidenced a clear lack of commitment. Although she maintained a visitation schedule with the children for the first five months of temporary custody, the appellant's visits with the children became more sporadic. The testimony at the hearing revealed numerous instances of the appellant either failing to set up visitation with the children or failing to appear for scheduled visitation. The appellant also failed to acknowledge the children's birthdays, failed to communicate regularly with them, and failed to provide financial support. All of these factors were relevant to demonstrate the Appellant's lack of commitment.
The record also contains other relevant factors indicating an unwillingness to provide an "adequate permanent home" for the children. Although the appellant contends that her completion of an alcohol and substance abuse treatment program "militated in favor of custody being restored," the record contains evidence that the appellant had not curtailed her alcohol and/or drug abuse. Ms. Poling testified that she visited the appellant numerous times between 1996 and 1998 and would often find the appellant intoxicated. Thus, there was evidence that the appellant continued to engage in alcohol and/or drug abuse, which belies a conclusion that she could provide an adequate permanent home for Cain and Bridgette. Perhaps more significantly, the record supports the juvenile court's finding that the appellant did not meaningfully communicate with the PCDHS, the children's counselors, or the children's doctors. This lack of communication also demonstrated the appellant's failure to take action in securing an "adequate permanent home" for the children, especially given the evidence that both Bridgette and Cain suffered from psychological problems that required medication.[4] The evidence that the appellant failed to adequately communicate with the PCDHS and comply with the case plan showed that she was particularly unequipped to deal with the children's special needs. See In re Hoff, supra (parent's incapability of meeting child's "special needs" is relevant in determining whither child should be placed with parent). Notwithstanding the uncontroverted evidence that both Cain and Bridgette preferred to live with their mother, we cannot second-guess the juvenile court's determination that the other relevant factors outweighed this desire. We therefore find that competent, credible evidence existed to support the trial court's finding that the R.C. 2151.414(E)(4) factors were established.
We overrule the appellant's lone assignment of error and affirm the judgment of the juvenile court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. Evans, J.: Concur in Judgment and Opinion.
For the Court
 BY: _______________________________ William H. Harsha, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.
[1] Each of the statutes cited in this opinion, i.e. R.C.2151.353, R.C. 2151.414, and R.C. 2151.415, were amended effective March 18, 1999. The permanent custody hearing in this case took place on December 28 and 29, 1998. Thus, the former versions of these statutes supply the applicable law in this case. All statutory references in this opinion therefore refer to the former versions of the statutes.
[2] The parties do not argue that the applicable "sunset date" in this case was July 22, 1997. Rather, the appellant emphasizes that the PCDHS filed its motion for permanent custody more thantwo years after Cain and Bridgette were first ordered into temporary custody. The appellant correctly interprets R.C.2151.415(D) to allow an agency two six-month extensions of a temporary custody order issued under R.C. 2151.353(F); thus, two years is the total time an agency may have temporary custody of a dependent child. See In re Omosun Children, supra,106 Ohio App.3d at 819. However, an agency may obtain these extensions of temporary custody only upon timely filing a motion pursuant to R.C. 2151.415(A). Without filing of a motion, the temporary custody order issued under R.C. 2151.353(F) expires one year after the date the dependency complaint was filed or the date the child was taken into emergency temporary custody, whichever occurred first. In re Young Children, supra,76 Ohio St.3d at 637. In this case, the PCDHS never filed a motion under R.C.2151.415(A) asking for an extension of temporary custody; rather, the juvenile court extended temporary custody over a two-year period by way of periodic journal entries purporting to accept the recommendations of the PCDHS. Because neither the appellant nor the PCDHS has raised it as an issue, we express no opinion regarding the propriety of the juvenile court's apparent suasponte extensions of temporary custody beyond the original one-year "sunset date." But, see, In re Harris (Aug. 10, 1995), Cuyahoga App. No. 66376, unreported (suggesting that juvenile court has authority to extend temporary custody on its own motion pursuant to R.C. 2151.417(B)).
[3] In re Young Children, supra, provides that the problems leading to the original temporary custody order must be unresolved or insufficiently mitigated before the juvenile court can issue a further dispositional order past the sunset date. However, the opinion is silent on either the burden or standard of proof attendant to such a determination. In the appellant's case, the juvenile court found that "the agency [PCDHS] has presented clear and convincing proof that [the appellant has] done little, if anything, to resolve or sufficiently mitigate the original problems that resulted in the removal of Bridgette and Cain from the home in the first place." Thus, the juvenile court ostensibly placed the burden of proof for this determination on the PCDHS and mandated a clear and convincing evidence standard. Because neither party to this appeal has raised an issue concerning this aspect of the court's decision and because we find that the PCDHS has met this standard in any event, we assume without deciding that the juvenile court correctly allocated the correct burden and standard of proof.
[4] A psychiatrist testified that Bridgette suffered from oppositional defiance disorder, attachment disorder, and attention deficit disorder. A PCDHS social worker who worked on the children's cases testified that cain took medication for attention deficit disorder.