OPINION
In these consolidated appeals, appellant, Nellie Stevens, the mother of two children, Jonathan and Mark Stevens, ages six and five respectively, challenges the judgment entered by the Union County Court of Common Pleas, Juvenile Division, which terminated her parental rights and granted permanent custody of her children to the Union County Department of Human Services ("DHS").
A review of the record on appeal indicates that complaints concerning the Stevens children were filed by DHS on September 22, 1999, alleging that the children were abused, neglected and dependent. DHS sought permanent custody of the children. The appellant responded by moving for custody of the children.
The record further reveals that at the adjudicatory hearing, appellant, who was represented by counsel, entered an admission to the allegations of abuse, neglect and dependency. The juvenile court accepted her admission and the hearing proceeded directly to disposition. After hearing the testimony of a number of witnesses, the juvenile court granted permanent custody of the children to DHS.
Appellant now appeals, raising the following eight assignments of error for our review:
 I. The trial court committed reversible error by failing to comply with the requirements of Juvenile Rule 29(D) of the Ohio Rules of Juvenile Procedure in taking appellant's admission at the beginning of the adjudicatory hearing, wherein the court failed to advise appellant of the effect of her admission.
 II. The trial court committed reversible error when it defined "clear and convincing evidence" while it was taking an admission from appellant pursuant to Juvenile Rule 29(D).
 III. The trial court erred in finding that appellee presented clear and convincing evidence to support that appellant demonstrated a lack of commitment to her children by failing to pay child support.
 IV. The trial court's decision that appellant failed the case plan and failed to remedy the conditions which placed the children out of the home, thereby ruling that the children should not or cannot be placed with either parent, is not supported by the evidence.
 V. Appellant was denied her Constitutional and statutory right to have this matter determined in a timely fashion because appellee dismissed and re-filed the same complaint in this matter on four separate occasions, and that the number of dismissals deprived her of her due process rights under the US Constitution and Ohio Constitution and was excessive and not done in compliance with Ohio Revised Code Section 2151.35, which results in plain error.
 VI. It was plain error for the court to consider as evidence of a lack of commitment to her children, that appellant had not had consistent contact or communication with her children, when that situation was created by appellee because appellee did not allow appellant any visitation with her children after April 13, 1998 until May 1999.
 VII. The trial court committed prejudicial error when it considered the best interests of the children first, before making the requisite finding that the children cannot or should not be placed with either parent in a reasonable amount of time.
 VIII. The trial court erred when it determined that appellant was unwilling to protect her children because she may date someone who could be abusive, even though there was no clear and convincing evidence presented to support that finding.
 Appellant asserts in her first and second assignments of error that the juvenile court committed reversible error in accepting her admission to the complaints because it failed to comply with the mandates of Juv.R. 29(D). Specifically, appellant claims that the juvenile court failed to advise her that her admission could lead to the permanent termination of her parental rights and challenges the court's redefinition of the DHS's burden of proof in the instant case with respect to the admission.
Juv.R. 29(D) states as follows:
 The court * * * shall not accept an admission without addressing the party personally and determining both of the following:
 (1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;
 (2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.
 In the instant case, the juvenile court did address appellant personally at the December 15, 1999 adjudicatory hearing to determine whether she understood the nature of the allegations contained in the complaints. The court also advised appellant as to these consequences of an admission: that the juvenile court can adjudicate the children to be abused, neglected, and dependent and then proceed to the dispositional phase upon DHS's request for permanent custody. The juvenile court further informed appellant that by entering an admission she was waiving her right to confront and cross-examine witnesses, to subpoena witnesses, to testify, and to have the agency prove the allegations in the complaints by clear and convincing evidence. Additionally, the juvenile court ensured that appellant was entering the admission voluntarily and that no promises had been made to cause her to enter the admission.
Upon consideration of the foregoing, it is apparent that the juvenile court did not err by failing to comply with Juv.R. 29(D) and by accepting appellant's admission. Although the juvenile court's definition of the applicable standard of proof, clear and convincing evidence, has been raised as error, the rule does not impose an obligation upon the court to inform appellant of the evidentiary standard prior to accepting the admission. Nor do we believe appellant was prejudiced by the different definition utilized by the juvenile court. Moreover, contrary to appellant's assertions, appellant's testimony during the dispositional hearing does confirm that she admitted the allegations and that she understood DHS was requesting permanent custody at the dispositional hearing. Appellant's first and second assignments of error are overruled.
The substance of appellant's third, fourth, sixth and eighth assignments of error is that the juvenile court was incorrect in finding that some of the statutory factors enumerated in R.C.2151.414(E) applied to her and that none of the factors relied upon in this case were supported by clear and convincing evidence. In determining whether the children cannot or should not be placed with either parent within a reasonable period of time, R.C.2151.414(E) requires that the court consider all relevant evidence, finding by clear and convincing evidence, that one or more of the enumerated factors exist that would prohibit placement of the children with one of their parents. It is evident that the juvenile court grounded its determination as to appellant on the following R.C. 2151.414(E) factors:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 * * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 * * *
 (14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 At the dispositional hearing, there was evidence before the juvenile court that the children were initially taken into foster care in August 1996 because of physical abuse by their father. The parents did separate in February 1997 and DHS established a case plan for appellant, which listed certain objectives to reunify appellant with her children under the protective supervision of DHS, including protecting the children from abuse or inappropriate discipline by the father. At that time, DHS assisted appellant with $4,000 to help her get on her feet financially and obtain a trailer and furnishings, which she moved into by April 1, 1997. The children were reunified with appellant on April 4, 1997 under protective supervision, but less than thirty days later, she allowed the father to live in their home. Because their father did leave shortly thereafter, the children were not removed from appellant's home at that time. However, when the parents were back together three months later, they then voluntarily brought the children to DHS for foster care.
The children were again reunited with appellant on November 21, 1997, subject to protective supervision by DHS. As part of the case plan developed by DHS, appellant was again required to live independently from the children's father in order to protect them from any abuse. There is some indication in the record that appellant did file a complaint for divorce against the children's father, but it was dismissed due to the fact that they had reunited. After DHS found that appellant had moved her children into their father's home in Franklin County, the children were again removed from appellant's care in April 1998. Appellant admitted that this was against the terms of the case plan and offered excuses as to why she did this, yet she did not contact DHS. The evidence demonstrates that there was substantiated abuse of one of the children by his parents. As a result, the case plan was revised from the goal of reunification to adoption.
Despite the objective of the case plans that appellant not allow contact with the children's father to protect them from abuse, the record indicates the primary problem in this case has been appellant's continued relationship with the perpetrator of the abuse after previous separations, causing a physical risk of abuse to her children each time they were reunited with her. Appellant herself conceded that she was unable to protect the children around their father. In addition, a clinical nurse specialist testified that the children have indicated that they do not want to live with appellant because they are afraid that they will not be safe from abuse by their father at appellant's home. The clinical nurse specialist noted the children appeared to have had trauma from the abuse and also expressed her concern of the potential emotional damage to these children should appellant be unable to protect them if returned home. While the children's parents were granted a dissolution of marriage on June 4, 1999, there has been no assurance thus far that appellant could provide a safe home environment for the children within a reasonable time.
Having reviewed the record, we find that the evidence clearly and convincing supports finding that R.C. 2151.414(E)(1) and (14) existed as to appellant. The juvenile court must find the existence of at least one of the R.C. 2151.414(E) factors by clear and convincing evidence. See In re William S. (1996), 75 Ohio St.3d 95,101. As to why the other factor that she failed to visit or support the children was not supported by the evidence, appellant proffered the arguments that there was no support order and that DHS had no obligation to schedule visitation under the case plan after it was revised for adoption. Although this is true, the juvenile court heard testimony from social worker Holbrook that she made arrangements for the parents to visit with the children in October 1998. During court-ordered visitation from May 1999 through September 1999, appellant saw her children eight times. Additionally, appellant has not provided any support for the children since they were placed with DHS, but did purchase birthday presents and provide snacks to her children during their visits. Even if appellant's arguments regarding the lack of clear and convincing evidence for this factor are correct, the juvenile court's decision to grant permanent custody was not based on this factor alone. Accordingly, we find no error in the juvenile court's conclusion based upon R.C. 2151.414(E) that the children cannot be placed with appellant within a reasonable time or should not be placed with her. Appellant's third, fourth, sixth and eighth assignments of error are overruled.
In her fifth assignment of error, appellant asserts that the number of dismissals and refilings that occurred during the pendency of this case constituted plain error as they violated her constitutional right to due process.
Pursuant to R.C. 2151.353(F), a temporary custody order issued under that section "shall terminate one year after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care," unless an extension of the temporary custody is granted. Based on the interplay between R.C.2151.353(F) and R.C. 2151.415(A) and (D), two years is the maximum period a public children services agency may have temporary custody of an abused or dependent child. See In re OmosunChildren (1995), 106 Ohio App.3d 813, 819.
Further, R.C. 2151.35(B)(1) mandates that a dispositional hearing in abuse, neglect or dependency proceedings shall be held not more than ninety days after the date on which the complaint was filed. If the dispositional hearing is not held within the specified ninety-day period, the court, upon its own motion or upon the motion of any party, "shall dismiss the complaint without prejudice." Id. In the case of Howard v. Catholic Social Serv.of Cuyahoga Cty., Inc. (1994), 70 Ohio St.3d 141, 144, the Ohio Supreme Court concluded that the juvenile court retains jurisdiction to consider subsequently filed complaints because R.C. 2151.35(B)(1) expressly states the dismissals are without prejudice. In its discussion as to habeas corpus, however, the Court theorized that there may be certain "extreme circumstances" in which habeas corpus would be appropriate where the statutory procedure of dismissals without prejudice deprives natural parents of their paramount constitutional right to the care, custody, and management of their children, without any findings as to parental suitability and the best interests of the children. It is well established that parents have a fundamental liberty interest in the care, custody and management of their children. See Santoskyv. Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 1394,71 L.Ed.2d 599, 606, and In re Murray (1990), 52 Ohio St.3d 155, 157,556 N.E.2d 1169, 1171. The Court, however, did not find such extreme circumstances present in Howard.
Even though the juvenile court's dismissals and subsequently filed complaints are not contained in the record on appeal, this court recognizes for purposes of a plain error analysis the testimony of social worker Holbrook that is contained in the record indicating there have been a number of dismissals and refilings in this case. The time period of such dismissals, however, as asserted in appellant's brief was since December 1998. It appears from this that DHS filed its motion for permanent custody more than two years after the children were first ordered into the temporary custody of DHS and was apparently a reason for a dismissal. Moreover, we note that an adjudication that a child is neglected or dependent followed by a disposition awarding temporary custody to an agency is a final appealable order. In reMurray, supra, syllabus.
Other than the motions and entries appended to appellant's brief that are not contained in the record on appeal, the only "subsequent complaints" in the record on appeal alleged that the children were abused, neglected, and dependent and were filed on September 22, 1999. The juvenile court granted temporary custody to DHS pending adjudication and disposition of the complaints and the order indicates that the court acted in the best interests of the children when it suspended visitation at that time. While this case may arise out of an unfortunate procedural history, R.C.2151.35(B)(1) does expressly state that dismissals of complaints are without prejudice and the facts and circumstances in the case at bar fall short of extreme circumstances where appellant's alleged denial of due process is plain error. Appellant's fifth assignment of error is overruled.
In her seventh assignment of error, appellant asserts that the trial court incorrectly applied the procedure in R.C. 2151.414 by first considering whether permanent commitment would be in the children's best interests before considering whether the children could not or should not be placed with either parent within a reasonable time.
In order to terminate parental rights and grant permanent custody to DHS, R.C. 2151.414(B)(1) requires that:
 * * * the court determine, * * * by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (a) The child is not abandoned or orphaned * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 * * *
 Appellant relies on In re William S., 75 Ohio St.3d at 99, in which the Ohio Supreme Court held that permanent custody may not be granted unless the trial court finds clear and convincing evidence that one or more of the enumerated factors in R.C. 2151.414(E) exist. As appellant points out, it is stated in the analysis performed by the Court that "[o]nce the trial court finds from all relevant evidence that one of the eight factors exist, it then must consider whether permanent commitment is in the best interest of the child. R.C. 2151.414(B)." Id. The court concluded by stating that "[o]nly then may [the trial court] grant permanent custody of the child to the agency." Id. While appellant proffered her argument as to the order of the requisite determinations when terminating parental rights, we find that under the two-prong test created by R.C. 2151.414(B), what is required is that the court find by clear and convincing evidence that granting permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D), and that the children cannot be placed with either parent within a reasonable time or should not be placed with their parents, based on an analysis under R.C. 2151.414(E). See In re Culver (June 23, 1999), Summit App. No. 19285, unreported at *2, 1999 WL 420287. Accordingly, we find that the juvenile court acted appropriately when deciding permanent custody and overrule this assignment of error.
The judgment of the Union County Court of Common Pleas, Juvenile Division, is affirmed.
WALTERS and BRYANT, JJ., concur.