**In re CAMPBELL.**

[Cite as *In re Campbell* (2000), 138 Ohio App.3d 786.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 99AP–986.

Decided June 8, 2000.

*Heather R. Saling,* for appellee, Franklin County Children Services.

*David K. Greer,* for appellant.

*Judith M. Stevenson,* Franklin County Public Defender, and *Paul Skendelas,* Assistant Public Defender, for guardian ad litem.

---

PEGGY BRYANT, Judge.

Appellant, Florence Campbell, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting permanent custody of Sabastian Campbell to Franklin County Children Services ("FCCS").

Appellant is the mother of Sabastian Campbell. In November 1996, Sabastian, then age two, was found to be a dependent minor. R.C. 2151.04. At that time, temporary custody of Sabastian was awarded to FCCS and a case plan was created in an attempt to eventually reunite appellant and Sabastian. Under the objectives of that case plan, appellant was required (1) to demonstrate that she was capable of parenting Sabastian, (2) to locate housing, and (3) to ensure a safe and nurturing environment for Sabastian. In order to facilitate and fulfill those objectives, appellant was also to secure stable employment. While in FCCS' custody, Sabastian was placed in the care of a foster parent, and appellant was permitted weekly visitations with him.

On May 22, 1998, FCCS filed a motion pursuant to R.C. 2151.413 seeking permanent custody of Sabastian. In February 1999, a hearing was held before a magistrate on FCCS' motion. R.C. 2151.414(A). According to the evidence, appellant, as part of her case plan, entered into the WINGS program, a two-year transitional housing program designed for homeless, mentally ill women. The program offered appellant a stable living environment, as well as support staff and resources, in an effort to help appellant create a more stable life for herself. WINGS director, Sheila Fairley, testified appellant's goals in the program were stable housing and employment. In that regard, appellant participated in and completed a computer training workshop, although her participation was sporadic both in that program and in other workshops offered through WINGS. Fairley worried about appellant's lack of commitment and initiative in achieving the goals of her case plan, and she harbored concerns about appellant regaining custody of Sabastian.

Lisa Fisher, a caseworker for FCCS who worked with appellant and Sabastian, noted that the main goal of appellant's case plan was stability in housing, employment and mental health counseling. She testified appellant (1) had not fulfilled the objectives of finding stable employment or housing, nor had she taken advantage of programs or help available to her to achieve those goals, and (2) had sporadically attended counseling sessions with a mental health counselor. Rosalind Logan, a vocational specialist for Columbus Area Mental Health who attempted to work with appellant to accomplish the objective of stability, testified appellant did not cooperate in attempting to get a job or even to meet with Logan to discuss appellant's options. Logan felt appellant is employable, but appellant had not demonstrated the energy and desire necessary to obtain employment.

Appellant also testified regarding the housing element of her case plan that she had been living at the YWCA for the past two years as part of the WINGS program. While living there she was unable to pay the rent of two dollars a month. Before living at the YWCA, appellant stayed at the Faith Mission Women's Shelter for a few months, and prior to that she lived in an apartment she left after falling behind three months in the rent.

She stated that at the time of the hearing she had entered into a one-year lease agreement with Broad Street Management for a HUD approved two-bedroom apartment. By the time of the hearing, appellant had not moved into the apartment, had not paid any rent or deposit, and had not paid to have the electricity transferred into her name. The apartment was not furnished, but appellant anticipated being able to furnish it within the year.

As to employment, appellant testified that during 1997 and 1998 her employment consisted of temporary fast food jobs, none of which lasted longer than a month or two. She stated, however, that she had begun a new job the weekend

before the hearing. The job paid $5.25 an hour and appellant estimated she would work thirty to thirty-six hours a week.

In terms of her need to prove herself capable of parenting Sabastian, appellant testified that through the Board of Mental Retardation and Developmental Disability ("MRDD") she completed a parenting class that taught her to deal with Sabastian's special needs and to parent through proper nutrition and discipline. She testified she thought she had a very good relationship with her son, considering she had been able to visit with her son for only an hour a week over the preceding two years.

After the hearing, the magistrate recommended that FCCS be awarded permanent custody of Sabastian. The magistrate found (1) appellant failed to remedy the major conditions requiring Sabastian's initial placement in foster care, (2) the child cannot and should not be placed with appellant within a reasonable time, and (3) Sabastian's best interest would be served by granting permanent custody to FCCS. Accordingly, the magistrate granted permanent custody of Sabastian to FCCS and permanently terminated appellant's parental rights. Over appellant's objections, the common pleas court adopted the magistrate's decision. Appellant appeals, assigning the following error:

"The trial court erred in adopting the magistrate's decision granting permanent custody to Franklin County Children Services because the decision was not supported by clear and convincing evidence, due to the fact that the mother completed the objectives of the case plan and there was no evidence that a permanent commitment would be in the best interest of the child."

Termination of the rights of a birth parent is an alternative of last resort, but is sanctioned when necessary for the welfare of the child. *In re Wise* (1994), 96 Ohio App.3d 619, 624, 645 N.E.2d 812, 814–815, citing *In re Cunningham* (1979), 59 Ohio St.2d 100, 105, 13 O.O.3d 78, 81, 391 N.E.2d 1034, 1037–1038. When a child is not abandoned or orphaned, permanent custody may be granted to a public children services agency under R.C. 2151.414(B) if the court determines by clear and convincing evidence that (1) it is in the best interest of the child to grant permanent custody, and (2) the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. *In re Brofford* (1992), 83 Ohio App.3d 869, 877, 615 N.E.2d 1120, 1125–1126.

The juvenile court, as the trier of fact, is to weigh the testimony and credibility of witnesses. *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178. In reviewing the juvenile court's judgment, this court must determine from the record whether the trial court had sufficient evidence to satisfy the clear and convincing standard. *Wise, supra.* Clear and convincing evidence requires that the proof "produce in the mind of the trier of facts a firm belief or conviction as

to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of syllabus; see, also, *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 18 OBR 419, 481 N.E.2d 613.

■ Applying R.C. 2151.414(B), as effective on the date of FCCS' motion for permanent custody, the trial court was required to consider all relevant factors in determining the best interest of the child, including, but not limited to, the following:

"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;

"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

"(3) The custodial history of the child * * *;

"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]"  R.C. 2151.414(D).

■ The magistrate found that Sabastian's best interest would be served by granting permanent custody to FCCS because Sabastian had been in alternative placement for some time.  As a result, although he had "somewhat bonded" with appellant, he had no relationship with appellant's other children, who were in the custody of others or were previously adopted.  By contrast, Sabastian enjoys a good relationship with his foster parent.  The magistrate also noted Sabastian required secure placement, which could only be achieved by a grant of permanent custody to FCCS.

The evidence supports the magistrate's conclusion.  Sabastian has spent almost half of his life in foster care, a factor relevant to the magistrate's decision.  *In re Brock* (Aug. 31, 1998), Clermont App. No. CA97–12–108, unreported, 1998 WL 549974.  Moreover, Fisher opined that appellant and Sabastian were not very close and were not bonded.  She noted that although appellant did not miss a significant number of visitations, Sabastian sometimes was not very excited about seeing her.  For her part, appellant was often unprepared for her visits with Sabastian and had problems setting limits for him during those visits.  By contrast, Fisher testified that Sabastian is bonded with his foster mother and is excited to return to her after his visits with appellant.  While the magistrate did not expressly take into account Sabastian's wishes, that was appropriate given Sabastian's being barely four years old.

■ The record further supports the magistrate's conclusion that a secure environment for Sabastian would only be achieved through the permanent

termination of appellant's parental rights. Appellant was unable to provide a stable environment, as she had failed to obtain stable housing or employment. Her lack of commitment to her case plan and to reunifying with Sabastian, as well as her inability to meet his needs for a secure environment through employment and housing stability, indicate divestiture of custody is the only means to advance a secure placement for Sabastian.

■ The second element of R.C. 2151.414(B) applicable here requires that the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. In assessing that factor, R.C. 2151.414(E) requires the trial court to consider all relevant evidence and to find that one of the circumstances provided for in the statute exist. Cf. *In re William S.* (1996), 75 Ohio St.3d 95, 661 N.E.2d 738. In that regard, the magistrate found appellant failed to substantially remedy the conditions causing Sabastian to be placed in foster care in 1996. R.C. 2151.414(E)(1).

■ Specifically, even with the help of counselors and her involvement in the WINGS program, appellant failed to stabilize her employment and housing problems. Although by the time of her hearing appellant had begun a job and had entered into a lease for an apartment, those facts do not compel the trial court to find the stability appellant needed to fulfill her case plan objectives. Indeed, in the past she had started many new jobs but was unable to maintain them for more than a month or two; appellant did not explain why the current job would be any different. Had she been employed at the new job for more than a weekend, her argument would be more persuasive. Similarly, her housing situation also remained fluid. Although appellant signed a lease to rent an apartment which would accommodate her and her son, as of the time of the hearing she had not paid her first month's rent. Indeed, the fact that she had two years at the YWCA to find suitable living and employment arrangements but did not do so until the week of this hearing, only further demonstrates the lack of stability and the failure to fulfill her case plan.

Moreover, appellant's failure to take advantage of the opportunities presented to her demonstrate a lack of commitment to Sabastian which further supports a finding that Sabastian cannot be placed with the parent within a reasonable time. R.C. 2151.414(E)(4). *In re Silvia* (Nov. 12, 1993), Franklin App. No. 93AP–612, unreported, 1993 WL 464606, citing *In re McCrary* (1991), 75 Ohio App.3d 601, 608, 600 N.E.2d 347, 352. In addition to her untimely efforts at finding employment and housing, she also missed many appointments with counselors and advisors that were attempting to help her in her plan to reunify with her son. Given appellant's failure to remedy the initial cause of Sabastain's commitment, the trial court's finding that Sabastian could not be placed with appellant within a reasonable time was supported by sufficient evidence.

■ Appellant nonetheless argues that homelessness and unemployment alone do not warrant the termination of parental rights. The trial court, however, did not terminate appellant's parental rights simply because she was unemployed and homeless. Rather, the court noted that appellant failed to take advantage of the many opportunities offered to her and thereby failed to remedy the problems that led to Sabastian being placed in alternative custody. Non-compliance with a case plan is grounds for termination of parental rights. *Brofford, supra,* 83 Ohio App.3d at 878, 615 N.E.2d at 1126.

■ Appellant also contends she failed to comply with the case plan because FCCS failed to make a good faith effort to implement it. *In re Forrest* (July 30, 1996), Franklin App. No. 96APF02–211, unreported, 1996 WL 434180. Pursuant to R.C. 2151.414(E)(1), FCCS must diligently attempt to assist the parents to remedy the problems that caused the child's initial placement into FCCS' custody. The magistrate found FCCS diligently attempted to assist appellant in her reunification plan, and that finding is supported by sufficient evidence.

Specifically, appellant's vocational specialist, Rosalind Logan, testified she referred appellant to Dr. McDonald for mental health counseling. She also attempted to acquire social security benefits for appellant, but appellant never filled out the required paperwork necessary to apply. Logan also testified to appellant's many missed appointments with Logan.

Indeed, appellant herself testified to FCCS' assistance. She received referrals through the WINGS program for employment, which offered assistance in getting a job. She also testified to an application that she filled out through FCCS' direction for an employment training program through New Directions, but she never returned the application. At FCCS' initiation, appellant received parenting classes through MRDD to help her deal with Sabastian's special needs. Appellant also contacted Lisa Fisher, her caseworker, regarding other employment and had received assistance from her.

In the final analysis, the trial court's findings in granting permanent custody to FCCS were supported by clear and convincing evidence. Appellant's single assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.

*Judgment affirmed.*

LAZARUS and KENNEDY, JJ., concur.