JOURNAL ENTRY and OPINION
Appellant Marionette Bunch appeals a decision by the trial court granting permanent custody of her children to the Cuyahoga County Department of Children and Family Services (CCDCFS). Bunch assigns the following two errors for our review:
 I. THE DISPOSITION RENDERED BY THE TRIAL COURT IS CONTRARY TO THE POLICY AND REQUIREMENTS OF OHIO REVISED CODE SECTIONS 2151.353 AND 2151.412.
 II. THE TRIAL COURT FAILED TO ACT IN THE BEST INTEREST OF THE CHILDREN, AS REQUIRED BY OHIO REVISED CODE SECTION 2151.414, IN RENDERING ITS DISPOSITION.
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
On April 13, 1998, John Cornwell, a social worker for CCDCFS, filed a complaint for permanent custody of six children of Marionette Bunch. The children were listed as Ericka (DOB 5/11/88); Marionette (DOB 10/31/89); Lulla (DOB 11/26/90); Darron (DOB 6/20/92); Deontra (DOB 9/9/93); and Deshawn (DOB 12/24/94). The complaint alleged that the children had been committed to the temporary custody of CCDCFS on February 8, 1996 and that, pursuant to law, the temporary custody order expired on February 8, 1998. The complaint further alleged that the children's mother, Marionette, had a drug abuse problem that prevented her from providing proper care for the children, that she failed to provide for the children's basic needs, that she failed to comply with previously approved case plans, that she lacked the appropriate parenting skills necessary to provide adequate care for the children, that she failed to seek proper prenatal care while pregnant with Deshawn who tested positive for cocaine at birth, that she was unable to provide a safe and appropriate environment for the children, and that her current whereabouts were unknown to CCDCFS.
Pursuant to its motion, CCDCFS was awarded temporary custody of the children pending the disposition of its complaint. Richard Smith was appointed as guardian ad litem for the children.
In his report filed with the court on September 8, 1998, Smith recommended that CCDCFS be granted only temporary custody of the children. Smith opined that a grant of permanent custody to CCDCFS was not in the children's best interests. He named the children's maternal grandmother, Carol Bunch, as a viable alternative to placing the children in the permanent custody of CCDCFS. He listed Carol Bunch's efforts to obtain suitable housing for the children, the availability of financial resources to the family and noted that the children's fundamental right to know and have a relationship with their relatives far outweighed the agency's interest in providing suitable children for adoption.
The case was called for hearing on September 9, 1998. CCDCFS presented the testimony of two of its social workers, Rashond Washington and John Cornwell, who worked on the case. Washington, who was the social worker on the case from August 5, 1995 until December 1997, testified that there was a case plan already in effect when she began working on the case and that the case plan called for Marionette Bunch to obtain drug treatment, appropriate and stable housing, and parenting training. Washington testified that, upon her initial visit to the Bunch home in August 1995, she found Marionette Bunch and her eight children living in a two-bedroom facility which she described as deplorable, overcrowded and filthy. The home also lacked a stove and refrigerator and was often without working utilities. She described the children as unkempt and characterized their school attendance as sporadic and irregular.
The children were removed from the home in February 1996. The oldest two children were placed with their maternal grandmother, Carol Bunch. The other six children were placed in foster homes. The CCDCFS issued another case plan calling for drug treatment/rehabilitation, after-care, random drug testing, stable and appropriate housing, parenting classes and case management. Washington testified that Marionette Bunch completed a 30 day drug treatment program, but that the program was ordered as part of her probation for a criminal drug offense. Washington added that, through December 1997, Marionette Bunch did not participate in an after-care program, did not comply with Washington's requests for random urine screens, and did not attend parenting classes. Washington testified that Bunch visited the children sporadically, and that she was discharged from a parenting program because of inconsistent attendance.
Washington stated she initially considered Carol Bunch as a placement for the children, but concluded that Carol Bunch did not have enough space to accommodate eight children. In addition, CCDCFS was concerned about whether Marionette Bunch actually lived in Carol Bunch's house. Washington testified that CCDCFS offered to pay Carol Bunch's first month's rent and security deposit as well as any fees incurred for the transfer of her utilities to assist her to find a bigger house. The agency also wrote letters to one prospective landlord but Carol Bunch was unable to find suitable housing. Washington found Carol Bunch to be cooperative with the agency's efforts but felt that Carol Bunch failed to seek appropriate housing anywhere other than through CMHA which had a lengthy waiting list.
Washington testified that Darron Bunch had exhibited aggressive and inappropriate sexual behavior at day care and in his foster home. She added that, on February 6, 1996, three-year-old Darron sexually offended against another three-year-old child in the foster home. Washington added that Lulla and Marionette also exhibited inappropriate sexual behavior and that Lulla sexually offended against a two-year-old boy at her foster home in Summer 1997. Marionette and Lulla were described as very aggressive in nature towards other children in school. Deshawn, Darron, Lulla, and Deontra all tested positive for cocaine at birth.
Washington stated that the children's alleged father, Aaron Brown, had only sporadic involvement with the family and failed to attend any meetings with Washington. Brown never contacted Washington about visiting the children or inquired about their well-being.
Washington testified that the children seemed stressed, nervous and intimidated during visits with their mother and that, from time to time, they said they did not want to visit. Washington added that Carol Bunch never visited the children at Metzenbaum during the two years she was involved with the case. However, Washington also admitted that, other than her housing situation, Carol Bunch was viewed as a suitable person to care for the children.
John Cornwell testified that he took over the case in January 1998. The initial referral to CCDCFS was in 1991. At that time, a case plan was developed which called for Marionette Bunch to obtain drug treatment and improve her parenting skills in order to maintain the children in the home. Other case plans were filed in 1993 and 1994 which also called for Marionette Bunch to receive drug treatment. Cornwell stated that, since he has worked on the case, Marionette Bunch had never provided any documentation that she has completed a drug and alcohol program and consistently failed to submit to random urine testing. He added that Marionette Bunch failed to participate in a parenting education program and, as of the date of the hearing, lived in a one or two bedroom suite on the second floor of a house. Cornwell stated that Marionette Bunch's residence did not have enough room for six children. He also said that it would be very difficult for Carol Bunch to accommodate six additional children in her four bedroom apartment. He added that the Bunch family tended to minimize the children's problems and that he didn't think the children would get the supervision, attention and involvement necessary to have a chance.
Cornwell stated that, when he first got the case, there was no visitation between Marionette Bunch and the children for a period of three to four months. Carol Bunch received a $50,000 settlement in a wrongful death action filed on behalf of the children. On July 2, 1998, Carol Bunch opened trust accounts for each of the children in the amount of $6,177. Cornwell stated that Carol Bunch had been visiting the children since June.
Cornwell testified that he did not want the children returned to Marionette Bunch or Carol Bunch. He admitted that, since taking the case, his goal has been for the children to be adopted. However, he stated that the children had already been in CCDCFS custody for two years when he took the case and no progress had been made on the case plan. He stated that, over a period of years, CCDCFS determined that the children needed permanent placement and their efforts to place them with the grandmother had failed. Carol Bunch remained on a waiting list for a six bedroom apartment and a CMHA administrator told Cornwell it could take anywhere from two months to three years for one to become available.
Carol Bunch testified that she had been trying to secure appropriate housing, viewing more than twenty potential residences through referrals from the May Dugan agency. Carol Bunch testified that she told Washington about her efforts and that CCDCFS knew she was actively seeking appropriate housing. She testified that Cornwell did nothing to help her obtain a six-bedroom apartment.
Carol Bunch testified that she wanted all the children to be together and that the children wanted to be together. She said that she did not visit the children between January and June of 1998 because Cornwell failed to set up the visits. She testified that she visited the children regularly when Washington was the social worker on the case, but that the visits stopped abruptly when Cornwell took over the case. She said she talked to Cornwell's supervisor, Gary Carrington about his failure to set up the visits. Thereafter, the supervisor contacted Cornwell and the visits resumed. Carrington testified and confirmed that he received a message from Carol Bunch in which she complained that Cornwell failed to show up for a scheduled visit. She said she attended all the staffings she knew about.
Carol Bunch stated she could make room for the children in her four bedroom apartment by using bunk beds. She added the CMHA was unwilling to give her a larger apartment unless and until she got custody of the children. She stated that she could take care of the children and could accommodate the children with special needs. She worked for four years as a nursing assistant taking care of people with medical problems and emotional problems.
After the hearing, both parties submitted findings of fact and conclusions of law. In a journal entry dated May 24, 1999, the trial court granted permanent custody of the children to CCDCFS.
 [T]he court finds by clear and convincing evidence that it is in the best interest of the children to grant permanent custody to the Cuyahoga County Department of Children and Family Services and that reasonable efforts by CCDCFS to prevent removal of the children from their home were made and the children were not abandoned or orphaned. The court further finds that the children cannot be placed with their parents within a reasonable time or should not be placed with their parents for the following reasons: parents have not remedied the conditions that caused the removal of the children from their home.
 Mother has a severe and chronic drug abuse problem which prevents her from providing proper and adequate care of children.
(Journal entry of 5/24/99.)
This appeal followed.
In her first assignment of error, Marionette Bunch argues the trial court erred in awarding permanent custody to CCDCFS when the children's maternal grandmother, Carol Bunch, was an appropriate placement for them. Citing In re Taceia R. (Feb. 16, 1996), Lucas App. No. L-95-155, unreported, Marionette Bunch argues that relatives must be given serious consideration as placement alternatives before permanent custody is granted to CCDCFS. However, in Taceia, the court stated that placing a child with a relative is just one option for the court to consider.
 R.C. 2151.412(G) sets out guidelines for the [agency] to consider; however, it does not obligate the agency to award custody to a relative rather than grant permanent custody to the agency. In reviewing the options, the court must put the best interests of the child first.
Taceia.See, also In re Hitchcock (1996), 120 Ohio App.3d 88, 102,696 N.E.2d 1090, 1098, appeal dismissed (1998),81 Ohio St.3d 1222, 689 N.E.2d 43; In re Robert R. (Feb. 25, 2000), Lucas App. No. L-99-1162, L-99-1185, unreported; In re Jayson M. (July 9, 1999), Lucas App. No. L-98-1404, unreported; In re Gary M. (June 22, 1998), Lucas App. No. L-96-210, unreported, discretionary appeal not allowed (1998), 83 Ohio St.3d 1452, 700 N.E.2d 334.
R.C. 2151.414(B)(1) authorizes the court to grant permanent custody of a child to CCDCFS if the court determines by clear and convincing evidence, that it is in the best interest of the child. In re Egbert Children (1994), 99 Ohio App.3d 492, 495,651 N.E.2d 38, 40. When determining what is in the best interest of a child, R.C. 2151.414(D) provides that the court shall consider all relevant factors, including:
 1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; (5) Whether any of the factors in divisions (E)(7) to (11)[1] of this section apply in relation to the parents and child.
In addition to determining that permanent custody is in the best interest of the child, the court must also find that either of the following apply:
 (a) the child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
In this case, the trial court found that the children were not abandoned and that they could not be placed in the custody of their parents within a reasonable time. Under R.C.2151.414(E), a court is required to make such a finding where the parent continuously and repeatedly fails to substantially remedy the conditions causing the child to be removed from the home or when the parent's chemical dependency renders the parent unable to provide an adequate permanent home for the child at the present time and the parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.
Social worker John Cornwell testified that the provisions of the case plan were basically the same since 1991 and that Marionette Bunch failed to make any progress toward compliance with the plan. She did not complete the required parenting classes, presented no documentation that she had completed a drug treatment/rehabilitation program and after-care, failed to submit to random drug testing, and failed to obtain suitable housing to accommodate the six children. In addition, Cornwell testified that Marionette Bunch did not visit the children at any time after he took over the case in January 1998. Before that time, Marionette Bunch visited the children only sporadically and, during those visits, Rashond Washington testified that the children appeared nervous and intimidated. It has been held that sporadic and irregular visitation patterns demonstrate that a parent is disinterested and that such a demonstrated lack of commitment toward a child is sufficient to support a finding that the child cannot be placed with the parent for a reasonable time. In re Maye v. Maye (May 4, 2000), Franklin App. No. 99AP-529, unreported, citing In re McCrary (1991), 75 Ohio App.3d 601, 606,600 N.E.2d 347, 351, motion to certify overruled (1992),64 Ohio St.3d 1427, 594 N.E.2d 969.
A finding that a child cannot be placed with either of its parents within a reasonable time must be supported by clear and convincing evidence evidence that produces a firm belief or conviction as to the facts sought to be established in the mind of the trier of fact. In re Hogue (Apr. 26, 2000), Summit App. No. 19657, unreported, citing In re Rankin, 1998 Ohio App. LEXIS 6215 (Dec. 23, 1998), Summit App. No. 19118, unreported. See also R.C.2151.414(B). As long as the trial court's decision to terminate a parent's parental rights is supported by clear and convincing evidence, the judgment will not be disturbed by a reviewing court. In re Dylan C. (1997), 121 Ohio App.3d 115, 121, 699 N.E.2d 107,111.
Our review of the record in this case reveals that the trial court properly considered the statutory factors in making its decision and cannot be said to have abused its discretion in this case. The evidence clearly established that Marionette Bunch failed to comply with the CCDCFS case plan, failed to regularly visit the children, failed to obtain suitable housing for the children, and failed to take the necessary steps to deal with her drug problem. Accordingly, we overrule Marionette Bunch's first assignment of error.
In her second assignment of error, Marionette Bunch argues that the trial court failed to act in the best interest of the children by not mentioning whether efforts would be made to allow the children to maintain contact with one another and by ignoring the guardian ad litem's recommendation that the children be placed with their maternal grandmother. She also argues the agency could have done more to help Carol Bunch secure appropriate housing.
R.C. 2151.28(B) (1) provides:
 The court shall determine whether there are any relatives of the child who are willing to be temporary custodians of the child. If any relative is willing to be a temporary custodian, the child otherwise would remain or be placed in shelter care, and the appointment is appropriate, the court shall appoint the relative as temporary custodian of the child, unless the court appoints another relative as custodian.
As discussed above, placement of a child with relatives is only one option for the court to consider. Taceia. Despite the desirability of placing a child with relatives, such a placement must be determined to be in the best interest of the child. Id.
Carol Bunch expressed her willingness to take care of the children and stated her belief that the children would be better off with her than with strangers. However, we are unconvinced that placing the children with Carol Bunch would be in the best interest of the children. As of the date of the hearing, Carol Bunch lived in a four bedroom apartment along with one of her granddaughters and a great granddaughter. Placing an additional six children in the home would require nine people to share four bedrooms. Carol Bunch stated that the bedrooms could be shared by same-sex siblings. However, in light of previous incidents of sexually aggressive behavior by Darron and Lulla toward younger children, we cannot say that such an arrangement would be in the best interest of the children.
While all parties agreed that finding suitable housing for large families is a difficult and lengthy process, our review of the record reveals that the agency made ample efforts to assist Carol Bunch in locating suitable housing. While we are mindful of Carol Bunch's insistence that she could make do in her current apartment, the evidence presented at the hearing indicated that obtaining larger housing could take as long as three years. Placing children with behavioral problems in a crowded environment for such a long period of time would clearly not be in their best interest.
Furthermore, the evidence revealed that Carol Bunch was awarded custody of her granddaughter, Carol, in February 1996. In November 1997, the agency recommended that Carol be placed in long-term foster care after Carol Bunch reported that Carol was defiant, disobedient, uncooperative and truant from school. Rashond Washington testified that Carol Bunch did not handle Carol's behavioral problems.
The guardian ad litem stated that his report was prepared before he heard the evidence presented at the hearing and described his recommendation that the children be placed with the grandmother as lukewarm. The trial court is not bound to accept a guardian ad litem's recommendation of custody. In re Haywood (May 9, 2000), Allen App. Nos. 1-99-93, 1-99-94, 1-99-95.
 The function of a guardian ad litem or for a representative for the child is to secure for such child a proper defense or an adequate protection of its rights. The ultimate decision in any proceeding is for the judge and not for the representative of the parties and the trial court did not, for that reason, err in making an order contrary to the recommendation of the child's representative.
Id. citing In re Height (1976), 47 Ohio App.2d 203, 206,353 N.E.2d 887, 890. Accordingly, we find no error in the trial court's failure to follow the guardian ad litem's recommendation.
We also reject Marionette Bunch's argument that the trial court erred by not mentioning whether efforts would be made to allow the children to maintain contact with one another. R.C.2151.414(D)(1) requires the trial court to consider, inter alia, the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child. The record reveals that the trial court heard testimony regarding the children's interaction with one another, with their mother, and with their grandmother. John Cornwell testified that the children looked forward to seeing each other and getting together. He described them as being happy to see each other during visits. This evidence was part of the record and allowed the trial court to consider sibling interaction when determining what was in the best interests of the children.
We conclude that the evidence contained in the record was sufficient to enable the trial court to make its decision as to the best interests of the children. Accordingly, we overrule Marionette Bunch's second assignment of error.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Juvenile Court Division of Common Pleas Court to carry this judgment into execution.
TIMOTHY E. McMONAGLE, P.J., and KENNETH A. ROCCO, J., CONCUR.
 ________________________________ PATRICIA ANN BLACKMON, JUDGE
[1] Those factors are whether the parent has been convicted of, pleaded guilty to, or participated in a conspiracy or attempt to commit or was complicit in committing aggravated murder, murder, voluntary manslaughter, felonious assault, aggravated assault, assault, child endangering, rape, sexual battery, corruption of a minor, gross sexual imposition, or sexual imposition where the victim was a sibling of the child or another child who lived in the parent's household at the time of the offense; whether the parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body; whether the parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 [2151.41.2] of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent; whether the parent has abandoned the child; and whether the parent's parental rights were involuntarily terminated with respect to a sibling of the child.