OPINION
{¶ 1} Appellant, Tim Moore, and appellant, Brenda Merida, appeal the decision of the Butler County Common Pleas Court, Juvenile Division, to terminate their parental rights and grant permanent custody of their children to the Butler County Children Services Board ("BCCSB"). We affirm the decision of the juvenile court.
 {¶ 2} Appellant mother and appellant father, although not married, live together and have three children. Appellant mother is intellectually challenged with an overall IQ of 55. Appellant father has a substance abuse problem. Their oldest child, Heather Moore, was born on August 28, 1996. Heather was adjudicated a neglected and dependent child in September of 1998 and placed in foster care. However, Heather was returned to her parents' custody in December 1999 after they completed case plan services.
 {¶ 3} Tiffany Moore was born on March 20, 1999. In February 2000, BCCSB filed a neglect and dependency complaint regarding Heather. After Tiffany was injured in the home, BCCSB also filed an abuse, neglect and dependency complaint regarding Tiffany. Appellants' home was found to be unsanitary, and the children were removed from the custody of their parents and placed in foster care on February 17, 2000. The parents attended weekly supervised visits.
 {¶ 4} Appellants' youngest child, Sarah Moore, was born shortly thereafter, on June 22, 2000. Sarah was born underweight, and was removed to foster care when appellant mother failed to maintain the feeding schedule set forth for the child. BCCSB filed a dependency complaint on behalf of Sarah on June 26, 2000.
 {¶ 5} In June 2001, Tiffany was found to be a dependent and an abused child with no named perpetrator of the abuse. Heather and Sarah were found to be dependent children. BCCSB adopted a case plan for appellants. Appellant father and appellant mother were ordered to begin all recommended services. In addition, John Merida, appellant mother's brother, filed a motion for custody on June 12, 2001.
 {¶ 6} In July 2001, appellants began an eight-week parenting class through Catholic Social Services. Appellants also began participation in a Development of Living Skills Program. Appellants completed both programs. However, appellant father was also ordered by the court to complete the substance abuse program at Sojourner. Appellant father was discharged from the program when he failed to attend nearly half of the sessions. Furthermore, he failed every one of his urine screens.
 {¶ 7} On March 6, 2002, the juvenile court granted BCCSB's motion for permanent custody of the children. Furthermore, John Merida's motion for custody was denied.
 {¶ 8} Although represented by separate counsel on appeal, appellant mother and appellant father appeal the decision of the juvenile court raising similar assignments of error. Appellant father's single assignment of error and appellant mother's first assignment of error are interrelated and will be addressed together.
Appellant Father's Assignment of Error
 {¶ 9} "The trial court's decision placing custody with the BCCSB is not supported by clear and convincing evidence."
Appellant Mother's Assignment of Error No. 1
 {¶ 10} "The trial court erred in finding that it was in the minor children's best interest that they be placed in the permanent custody of BCCSB as the prosecution failed to meet its burden of proof requiring clear and convincing evidence."
 {¶ 11} Appellants allege that the evidence presented at trial does not support the conclusion that a grant of permanent custody to BCCSB is in the children's best interest. Appellants each argue that the children's best interest would be served through a grant of permanent custody to appellant father or appellant mother.
 {¶ 12} Natural parents have a constitutionally protected liberty interest in the care and custody of their children. See Santosky v.Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388. A motion by the state for permanent custody seeks not merely to infringe upon that fundamental liberty interest, but to end it. Id. at 759, 102 S.Ct. at 1397. In order to satisfy due process, the state is required to prove by clear and convincing evidence that the statutory standards have been met. Id. at 769, 102 S.Ct. at 1403. Clear and convincing evidence requires that the proof produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Rodgers (2000),138 Ohio App.3d 510, 519, quoting Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 13} Before granting permanent custody of a child to the state, the trial court is required to make specific statutory findings. The reviewing court must determine whether the trial court followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. In re William S., 75 Ohio St.3d 95,101, 1996-Ohio-182. The agency must demonstrate that "it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." R.C. 2151.414(A)(1). In making this best interest determination, the trial court must consider all relevant factors, including but not limited to the following factors enumerated in R.C. 2151.414(D):
 {¶ 14} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 15} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 16} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 17} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 18} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 19} The trial court stated that while it is not required to determine whether the children cannot be placed with either parent within a reasonable time or should not be placed with either parent, it would address the issue. With respect to the determination of whether a child cannot be placed with either parent within a reasonable time, or should not be placed with his parents, the factors to be considered pursuant to R.C. 2151.414(E) include the following:
 {¶ 20} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
 {¶ 21} The trial court carefully considered each statutory factor and made relevant findings supported by the record. Heather and Tiffany have been in foster care since their removal in February of 2000. Sarah has been in the same foster placement with her siblings since the day after her birth on June 22, 2000. See R.C. 2151.414(D)(1). At the time of the final hearing, Heather and Tiffany had been in foster care with the same family for approximately 25 months. See R.C. 2151.414(D)(3). At the time of the final hearing, Sarah had been in foster care with the same family for approximately 20 months. See id. The trial court found that all of the children had bonded with their foster family. See R.C.2151.414(D)(1). The children refer to the foster parents as "Mommy" and "Daddy." See id.
 {¶ 22} Furthermore, the trial court found that the children needed a legally secure placement, which the foster family could provide. The trial court noted that the foster family participates "in an active lifestyle of family activities with the foster parents and the other six children that reside in the foster home. Heather is enrolled in preschool, plays soccer, and she and Tiffany participate in gymnastics. * * * all six children play with and help take care of Heather, Tiffany, and Sarah. The foster mother also testified to the willingness of the family to adopt the children to establish their permanency in this manner." See R.C. 2151.414(D)(4).
 {¶ 23} Conversely, the parents cannot provide a legally secure placement. Dr. Charles Lee observed visits between the children and appellant father and appellant mother as part of his evaluation at Children's Diagnostic Center. Dr. Lee described the visits as chaotic with a distinct parental hierarchy problem. See id. Dr. Lee elaborated by stating that both parents have difficulty assuming their roles as parents. As an example, Dr. Lee related how appellant mother spent the first 20 minutes of a visit working on a puzzle and ignoring the children. See id.
 {¶ 24} Appellants specifically argue that granting permanent custody to BCCSB is not in the best interest of their children. In support of this contention, appellant mother notes that she has completed all of her parenting classes. However, Dr. Lee testified that appellant mother has completed other parenting classes before and she still needs support on an ongoing basis in order to rear the three children because she has "difficulties retaining and using the skills she would try to learn [to become a better] parent." See R.C. 2151.414(E)(1). Karen Lavender, a parent educator with the Development of Living Skills program, corroborated Dr. Lee's assessment when she testified that appellant mother demonstrated difficulty in "carrying over" ideas from one session to another.
 {¶ 25} Appellant mother's brother, John Merida, wishing the children to stay with family instead of foster care, filed for legal custody of the children. However, Merida has only visited the children seven times between the date of their removal on February 17, 2000, and when he filed for legal custody in June of 2001. See R.C. 2151.414(D)(1).
 {¶ 26} Appellant father notes that "during visitations with the children, the interaction has been generally good between father and children." Furthermore, he notes that he has completed his case plan parenting classes successfully and there have been no allegations of violence involving the children. However, appellant father has a history of substance abuse. See id. Appellant father was ordered to complete the substance abuse program at Sojourner. Appellant father failed to complete the program and was discharged because he missed ten out of 22 sessions and only went to two Narcotics Anonymous meetings. See id.
 {¶ 27} Consequently, the children cannot be placed with either parent within a reasonable time. The future well-being of a child dictates that "the child need not wait any longer than necessary for its mother or father to assume his or her rightful responsibilities." In Re McCrary
(1991), 75 Ohio App.3d 601, 609. Therefore, where a parent has "repeatedly exhibited behavior which adversely affects [the child], * * * the parent's right to [the child] is properly subordinated." Id.
 {¶ 28} Based on our review of the factors in R.C. 2151.414 and all relevant evidence in the record, we find that clear and convincing evidence supports the trial court's finding that placement of the children in the permanent custody of BCCSB was in their best interest and met the criteria set forth in R.C. 2151.414. We conclude that the trial court did not abuse its discretion. See In re William S., 75 Ohio St.3d 95,1996-Ohio-182. Therefore, appellants' assignment of error is overruled.
Appellant Mother's Assignment of Error No. 2
 {¶ 29} "The trial court erred in finding that reasonable efforts were made to reunify appellant [mother] with the children."
 {¶ 30} Appellant mother argues that she "followed through on all of her required case plan." She states that she had adequate and clean housing for her family and that she could support the children financially. Appellant mother argues that in spite of this, BCCSB failed to make reasonable efforts to return the children to her. Appellant mother argues that BCCSB's failure to reunite her with the children is based upon BCCSB's refusal to consider appellant mother as a care provider without appellant father. Furthermore, appellant mother argues that she "should not be stripped of her children because of other's inactions" since appellant father is unable to follow through with drug counseling and treatment.
 {¶ 31} This court has previously reviewed the effort required by a county for attempting reunification between dependent children and their parents. "[A] good faith effort to implement a reunification plan means an honest, purposeful effort, free of malice and the design to defraud or to seek unconscionable advantage." In re Weaver (1992), 79 Ohio App.3d 59,63. In contrast, "[a] lack of good faith effort is defined as importing a dishonest purpose, conscious wrongdoing or breach of a known duty based on some ulterior motive or ill will in the nature of fraud." Id. at 64. In this case, BCCSB designed a case plan for appellants to follow. BCCSB made referrals for the parents to engage in parenting class at Catholic Social Services. BCCSB assisted the parents in engaging in the Development of Living Skills program. Our review strongly indicates, quite contrary to appellant mother's position, that BCCSB exercised a significant level of patience in seeking to carry out its obligations in this matter.
 {¶ 32} Our review also strongly indicates that appellant mother has tried to comply with what has been required of her for reunification. However, Dr. Lee testified that appellant mother, being intellectually challenged with an overall IQ of 55, cannot parent these children alone. Therefore, appellant mother needs a co-parent to provide her with continuing support in order to rear the three children.
 {¶ 33} Appellant father was ordered by the court to complete the substance abuse program at Sojourner. Appellant father has failed to complete the program. He was discharged because he missed ten out of a possible 22 sessions. Furthermore, he failed every one of his urine screens. Appellant father was warned that a failure to complete the substance abuse program could lead to interference with reunification. Appellant father has not demonstrated any commitment to complete the services necessary for reunification.
 {¶ 34} Appellant mother also asked the court to consider her brother, John Merida, as a co-parent in place of appellant father. The juvenile court ordered Merida to undergo a substance abuse evaluation. The evaluation was invalidated because Merida falsified his answers to the evaluator by stating that there was no history of family alcohol abuse issues and that he had never thought of suicide. Furthermore, Dr. Lee testified that John Merida needed to address anger management issues and get treatment for anxiety issues before he would be able to parent.
 {¶ 35} Having reviewed the record, we find that BCCSB made a good-faith effort to reunify the children with their mother. Furthermore, the record contains clear and convincing evidence to support the juvenile court's decision that it was in the children's best interests to award BCCSB permanent custody of the children. Based on the foregoing reasons, appellant mother's second assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., and VALEN, J., concur.