DECISION
Appellant, Kimberly A. Miller, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, overruling her objections to the magistrate's decision and granting the permanent custody motion of appellee, Franklin County Children Services ("FCCS").
FCCS filed a complaint on April 30, 1998, alleging that appellant's minor child, Faith Peterson (born March 6, 1998), was a neglected and dependent child based on appellant being homeless, a history of domestic violence, and appellant's verbally abusive and disorderly behavior at the hospital after Faith's birth. On May 1, 1998, the magistrate granted a temporary order of custody to FCCS and ordered supervised visitation between appellant and Faith. A hearing was held on the complaint on July 23, 1998. The magistrate issued a decision, which was adopted by the trial court on July 30, 1998, adjudicating Faith as a dependent child as defined in R.C. 2151.04(C) and granting a temporary commitment of custody to FCCS. The magistrate also adopted the case plan prepared by FCCS. No objections were filed to the magistrate's decision.
FCCS filed a motion for permanent custody, pursuant to R.C. 2151.413, on September 8, 1999. The magistrate held hearings on the permanent custody motion on March 15, 21, and 22, 2000. The magistrate filed a decision, which was adopted by the trial court on October 18, 1999, granting the motion for permanent custody. The magistrate found that appellant has not demonstrated an ability or willingness to successfully parent Faith, in that she did not complete the portions of the case plan related to the care and custody of Faith. Specifically, the magistrate found that appellant failed to complete anger management counseling, drug and alcohol counseling, and failed to obtain housing despite having assistance. Thus, the magistrate concluded that FCCS proved by clear and convincing evidence that appellant failed continuously and repeatedly for a period of more than six months to substantially remedy the conditions causing Faith to be placed outside the home, and that it was in Faith's best interest to be permanently placed with FCCS for the purpose of adoption.
Appellant filed timely objections to the magistrate's decision and supplemental objections. However, the trial court, agreeing with the magistrate's conclusion that appellant had not substantially completed the objectives of the case plan that were necessary for her to regain custody of Faith, overruled the objections and adopted the magistrate's decision in a decision filed March 16, 2001. Appellant filed a timely notice of appeal.
On appeal, appellant asserts two assignments of error:
FIRST ASSIGNMENT OF ERROR
 The trial court erred in granting the motion for permanent custody as the decision was against the manifest weight of the evidence and contrary to law.
SECOND ASSIGNMENT OF ERROR
 The Trial Court erred in denying Appellant's Motion requesting the Court to declare Ohio Rev. Code § 2151.413 and § 2151.414[in particular, E(1) (16) "Any other factor the court considers relevant."], facially and as applied to Appellant, which set forth Ohio Statutory Standards in ascertaining the termination of parental rights, unconstitutional and therefore void in violation of Appellant's fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Section One, Three, and Twenty, and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Vagueness, indefinite, and overbroad; (2) Denial of Appellant's fundamental expression of speech and right of association; (3) fundamental unfairness; and (4) Denial of Equal Protection of the laws. Appellant further submits that her substantially important right is equal to that involved in "a criminal action to deny a defendant liberty or life" and, as such, should be entitled to the same heightened protections consistent with the United States and the Ohio Constitutions.
Appellant was homeless and living at the Faith Mission prior to Faith's birth on March 6, 1998. Due to appellant's homelessness and the disorderly behavior appellant exhibited at the hospital after Faith's birth, Faith was placed in the temporary custody of FCCS. Faith has lived with her foster mother, Kathy Miller, since immediately after her birth. Appellant has five other children, none of whom are in her care. Two of appellant's children were placed for adoption in other states, while one is deceased and the other two live with relatives. Faith's father, Todd Peterson, only visited with her once (in April 1998) and has not participated in any services toward reunification.
Under the objectives of the case plan, appellant was to secure housing, to obtain stable full-time employment, to complete parenting classes, to cooperate with mental health and domestic violence counseling, and to complete a drug and alcohol assessment and follow through with the recommendations.
Appellant was residing at the YWCA at the time of the hearing before the magistrate. She had participated in the WINGS program, a two-year transitional living program for women requiring counseling, housing and job training. Appellant was scheduled to graduate from WINGS in April 2000. She was unsure of her future housing plans at the time of hearing before the magistrate. She had rejected housing through Section VIII and Broad Street Management because she did not like the neighborhoods in which the houses were located. Although appellant had the option to remain at the YWCA paying market-rate rent after completing WINGS, children are not permitted to reside at the YWCA.
Appellant was unemployed at the time of the hearing, and she had not worked in over a year. She had been employed as a housekeeper at the Westin from July 12, 1998 to March 5, 1999, earning $1,000 per month, but she asserted that she had to quit because of knee problems. Two months prior to the hearing, appellant enrolled in a job training program through Columbus Works. In February 2000, she enrolled in a job training program through Goodwill, and she was progressing well in the program. She receives $188 per month in disability benefits, and she was to receive $420 per month through the Veteran's Administration Rehabilitation Program while attending school full time.
Appellant completed parenting classes through Crittendon Family Services; however, appellant's FCCS caseworker, Kristie Thornton, testified that she believed that appellant had not internalized the parenting skills taught in the classes. Thornton stated that appellant did not have an appreciation of age-appropriate behavior and that she did not appropriately discipline Faith; however, other witnesses observed appellant demonstrating good parenting skills and conscientious care of Faith during visits.
Appellant participated in individual counseling for two months through the Veteran's Administration Outpatient Clinic. Appellant indicated that she discontinued her counseling because she felt it was going nowhere and that she could control her anger. Appellant refused to participate in any form of domestic violence counseling or anger management classes. The testimony established that appellant's relationship with Faith's father included incidents of domestic violence. Moreover, there was testimony from several witnesses that appellant has trouble controlling her anger.
Although appellant completed the drug and alcohol assessment, she did not follow through with counseling after being referred by FCCS. She was given ten vouchers for urine screens, but she only completed four or five of the screens. One of the screens was positive for barbiturates, but appellant explained that it was due to her migraine medication; however, Thornton testified that drug and alcohol abuse was not really an issue in the case.
In appellant's first assignment of error, she argues that the trial court erred by granting FCCS's motion for permanent custody because the decision is against the manifest weight of the evidence and is contrary to law. We disagree.
In determining whether a decision of a trial court is against the manifest weight of the evidence, an appellate court is guided by the presumption that the trial court's findings were correct. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus.
Under the version of R.C. 2151.414 in effect when the permanent custody motion was filed, FCCS was required to prove by clear and convincing evidence that Faith could not be placed with appellant within a reasonable time or should not be placed with her, and that it was in Faith's best interest to grant the permanent custody motion. See In re Campbell (2000), 138 Ohio App.3d 786, 790. Clear and convincing evidence has been defined as evidence that produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368. The juvenile court, sitting as the trier of fact, must weigh the evidence and assess the credibility of witnesses. Campbell, at 790. When the requisite degree of proof of a factor is proof by clear and convincing evidence, the reviewing court must examine the record to determine if sufficient evidence was presented to the trier of fact to satisfy the requisite degree of proof. Id.; In re Patterson (1999),134 Ohio App.3d 119, 123-124.
The first prong of the inquiry under R.C. 2151.414 is whether Faith cannot be placed with appellant within a reasonable time or should not be placed with her. Both the trial court and the magistrate concluded that this prong was satisfied by clear and convincing evidence because appellant failed to substantially remedy the conditions that caused Faith to be placed outside appellant's care, as provided in R.C. 2151.414(E)(1). Specifically, the trial court and the magistrate found that appellant failed to substantially comply with the objectives of the case plan regarding housing, employment, mental health and domestic violence counseling, and parenting.
Although appellant argues that she substantially complied with the case plan, our review of the evidence in the record fully supports the trial court's decision. Appellant had two years to find stable housing and was provided assistance through Columbus Metropolitan Housing and Broad Street Management; however, she rejected these subsidized housing options and allowed her Section VIII certificate to expire. Although appellant knew that Faith could not live with her at the YWCA, she was considering remaining at the YWCA as of the time of the hearing.
With regard to employment, appellant had been unemployed for approximately one year at the time of the hearing. Only in the six weeks prior to the hearing did she begin to utilize employment training services by enrolling in Columbus Works and training through Goodwill. Although appellant appeared to be progressing well in these programs, there was testimony that she had trouble keeping jobs because of personality conflicts.
Appellant also failed to complete the objectives of the case plan that related to her ability to care for Faith on a day-to-day basis. While she attended parenting classes, she failed to utilize age-appropriate discipline on several occasions. There was testimony that appellant exhibited appropriate parenting skills during her weekly supervised visits with Faith, but both the FCCS caseworker and the Guardian ad Litem expressed concern about appellant's ability to handle the stress of parenting Faith full-time while also working and managing the normal pressures of life. Additionally, appellant took few steps to address the anger management and domestic violence issues in the case plan. In her testimony, she seemed to indicate that her only issues were financial, despite evidence of prior domestic violence and several incidents demonstrating her inability to control her anger.
As this court noted in Campbell, the failure of a parent to take advantage of available opportunities to remedy the conditions that caused the child to be removed demonstrates a lack of commitment to the child and supports a finding that the child cannot be placed with the parent within a reasonable time. Campbell, at 792. Moreover, a parent's failure to comply with the objectives of the case plan is grounds for termination of parental rights. Id. at 793. While appellant has made some progress towards completing the objectives of the case plan, she failed to utilize many services available to her until immediately prior to the hearing before the magistrate. Thus, there was sufficient evidence in the record for the trial court to conclude that Faith cannot be placed with appellant within a reasonable time or should not be placed with her.
The second prong of the inquiry under R.C. 2151.414 is whether it is in Faith's best interest to grant the permanent custody motion. Both the trial court and the magistrate found that FCCS had established by clear and convincing evidence that it was in Faith's best interest to grant the permanent custody motion. The trial court conducted a thorough analysis of the best interest factors under R.C. 2151.414(D), and our review of the evidence in the record fully supports the trial court's findings. Faith's weekly supervised visits with appellant went well, though it appears from the record that they only occurred once a week for two hours. The testimony indicated that Faith is as equally bonded with appellant as she is with Thornton, her FCCS caseworker. Faith is too young to express her wishes, but the Guardian ad Litem recommended that the permanent custody motion be granted. Faith has never been in appellant's care, and has lived with her foster mother since her birth. The evidence indicates that Faith is in need of a legally secure placement. Thus, there was sufficient evidence in the record for the trial court to conclude that it was in Faith's best interest to grant the permanent custody motion.
Finally, appellant suggests that FCCS was not diligent in its efforts to assist her in completing the objectives of the case plan; however, both the magistrate and the Guardian ad Litem indicated that FCCS was diligent in its efforts to aid in the reunification of Faith and appellant. The record supports this finding as well. Many services were made available to appellant, yet she failed to utilize many of these services until immediately prior to the hearing.
Consequently, we conclude that the trial court did not err by overruling appellant's objections and sustaining FCCS's permanent custody motion. There was sufficient evidence in the record for the trial court to find that FCCS met its burden by clear and convincing evidence. Thus, appellant's first assignment of error is overruled.
In appellant's second assignment of error, she raises numerous constitutional challenges to R.C. 2151.413 and 2151.414; however, as appellee and the Guardian ad Litem assert, appellant failed to raise these issues before the magistrate or the trial court. Issues that are not raised before a trial court are waived on appeal. State ex rel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78, 81. The waiver rule applies to challenges to the facial constitutionality of a statute. VFW Post 1238 Belleview v. Ohio Liquor Control Comm. (1998),131 Ohio App.3d 591, 596. Consequently, appellant's second assignment of error is overruled.
Based upon the foregoing reasons, appellant's two assignments of error are overruled, and the decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
 ___________________ KENNEDY, J.
DESHLER and LAZARUS, JJ., concur.